# National Bank of the Republic v. Dickinson.

*Bill in equity to set aside conveyance for fraud.*

1. *Right of insolvent debtor to prefer creditors.*—A failing or insolvent debtor, unrestrained by statute, may prefer and pay one or more creditors, though the effect of the preference is the hindrance and delay of all other creditors, or the deprivation of all possibility of their payment from the present assets of the debtor, and though it maybe the result was contemplated and known by the debtor giving, and the creditor accepting the preference.

2. *Creditor claiming preference, must, when assailed, prove its consideration.*—When a preference is created by an insolvent debtor by a sale, the parties claiming the preference, as against existing creditors, must support it, when assailed, by proving its consideration—that the debt preferred is a just debt, of legal obligation, and that the property taken in payment does not materially exceed in value the amount of the debt—and upon these facts being shown, the sale will be supported, unless it appears there was a secret trust for the benefit of the debtor, or the reservation of some benefit to him, which is not the mere incident of the sale itself.

3. *Assumption by purchaser of specified debts of vendor sufficient consideration for sale.*—Where the consideration of a sale in part, is the promise of the purchaser to pay the debts of certain creditors of the vendor, who had no knowledge of such promise, it is binding on the purchaser and *pro tanto* forms a valuable consideration to support the sale.

4. *Assumption by purchaser of rent for entire term as part consideration of sale.*—The fact that one of the obligations assumed by the pur-

chaser of goods, was the payment of the rent for the entire term on the building in which the goods were stored, which was not due when the sale was made, does not affect the validity of the sale, where the debtor was under contract to pay the rent, and the goods sold were subject to attachment therefor.

5. *Agreement to pay clerk hire to be subsequently earned, as part consideration of preferential sale.*—The fact that one of the obligations assumed by the purchaser of goods, was the salaries of clerks to be subsequently earned, does not affect the validity of the sale, where the contract to pay such salaries was entire, creating a liability on the vendor for the stipulated wages.

6. *Authority of one partner to bind firm to assume debts of vendor, as consideration for sale.*—A firm formed to buy and sell merchandise, is bound by its contract assuming obligations of a debtor in consideration of a sale of merchandise by him to the firm, though the transaction was conducted by one partner.

7. *Debtor may prefer wife by sale of property.*—A debtor may give a preference to his wife in a sale of his property wherein the purchaser assumes certain debts, including a *bona fide* debt due to the wife.

APPEAL from the chancery court of Barbour.

Tried before the Hon. JERE N. WILLIAMS.

The bill in this case was filed on February 16th, 1892 by the appellant, The National Bank of the Republic, against the appellees, Homer Dickinson, Florence Dickinson, his wife, James, D Rhodes, Mamie C Long, late partners, using the firm name of Long & Rhodes, and S. H. Dent, Jr. The complainant files the bill as a creditor of the said Homer Dickinson, his indebtedness being evidenced by a draft accepted by said Dickinson, and endorsed to complainant, and payable on October 1, 1891, and seeks to have set aside as fraudulent and void a certain conveyance of all his property by Homer Dickinson to the other respondents, as having been made by said Dickinson with the intent to hinder, delay or defraud his creditors. This relief is predicated upon facts averred in the bill as follows: On September 29th, 1891, Homer Dickinson sold and conveyed unto the other respondents his entire stock of goods then in the storehouse occupied by him, his lease to said storehouse, which expired August, 31, 1892, the book accounts, notes and other claims held and owned by him, one mule and wagon and harness, ten shares of stock in a building and loan association, and one seat in the Grocers' Exchange. The consideration for the transfer

and sale of the property is thus expressed in the conveyance itself, which is made an exhibit to the bill: "Whereas I, H. Dickinson, am indebted to the following parties in the following sums, towit: to my wife, Florence R Dickinson, in the sum of twenty-three hundred and eighty-six 86—100 dollars, as evidenced by my promissory note for said sum dated August 18th, 1891, and payable September 25th, 1891, with interest from date; to Long & Rhodes, a partnership composed of M. C. Long and J. D. Rhodes, in the sum of six hundred and twenty-two 26—100 dollars the same being the amount of a certain judgment obtained against me in favor of H. D. Clayton, Receiver of the John McNab Bank at the last term of the circuit court of said county sitting at Eufaula, which, with interest and cost, has been assumed by the said Long & Rhodes; also in the sum of eleven hundred and seventy 78—-100 dollars, the same being the amount of my indebtedness to the Eufaula National Bank, a corporation, and for which indebtedness said Long & Rhodes are securities, and have assumed and argeed with said Eufaula National Bank to pay the same for me; also in the sum of three hundred dollars, which I, the said H. Dickinson, owe to Jacob Ramser, rent for the storehouse now occupied by me for the year ending August 31st, 1892, which said sum the said Long & Rhodes have assumed and agreed to pay; also in the sum of five hundred and seventy-five dollars, which I, the said H. Dickinson, owe to Geo. W. Carter, as Clerk hire for the year ending August 31st, 1892, and which the said Long & Rhodes have assumed and agreed to pay; also the sum of ninety-seven 50—100 dollars, which the said H. Dickinson owes to Clarence Black as clerk hire, and which said sum said Long & Rhodes have assumed and agreed to pay; and to S. H. Dent, Jr. in the sum of three hundred dollars; and whereas I, the said H. Dickinson, am desirous of paying the said indebtedness hereinabove set out and described. Now, therefore, in considerations of the premises and the acceptance of the property hereinafter conveyed by the aforesaid parties in full satisfaction and discharge of the indebtedness hereinabove mentioned and described, I have this day bargained, "&c. The bill avers that all of the respondents were and are intimate with and bear a confidential relationship to said H. Dickinson, and

they, together with said H. Dickinson, conspired to hinder, delay or defraud and prevent complainant from collecting its said debt, and in pursuance of such combination, and the grantees participating in the intent of said Dickinson, did make and execute the conveyance above referred to, and accept the same; that said conveyance covers and includes all of the property of H. Dickinson who is and was at the time of said conveyance wholly insolvent; that the property conveyed by said written instrument was greatly in excess of the debts mentioned; that the value of the unexpired term of the lease of the storehouse, which is conveyed, is greater, or, at least, equal to the debt due to the said Jacob Ramser, which by the terms of said conveyance Long & Rhodes assumed and agreed to pay; that the debts mentioned in said conveyance, which Long & Rhodes assumed and agreed to pay to George W. Carter and Clarence Black is for the salary of each not yet earned, both of said parties having been clerks in the employ of said H. Dickinson, and have since been in the employ of the alleged purchasers of the said stock of goods, and have been engaged in the sale of said goods; that by the terms of the conveyance Long & Rhodes are not bound to pay Carter and Black the amounts they assumed to pay them, unless they render to Long & Rhodes the service they owed to Dickinson under his contract of hire with them; and if said Carter and Black fail to render their service according to their contract, then said Long & Rhodes will owe them nothing; and if the court should determine that said services were due to H. Dickinson and not to Long & Rhodes, then, there was a benefit reserved to Dickinson in the making of the conveyance, and for this reason the sale was void. It was further averred that Mrs. Long of Long & Rhodes was H. Dickinson's sister-in-law, and Rhodes was his brother-in-law; and S. H. Dent, Jr. was his lawyer. And continuing the bill averred "That the assuming of said various debts mentioned in said instrument being outside of the purposes and business of said partnership of Long & Rhodes (they doing a mercantile business,) that said firm was not bound by said contract to pay said debts; and M. C. Long being a married woman, and not have signed, and her husband not having consented as required by law, she is not bound by said

contract of assuming; and, therefore, the property attempted to be delivered in payment of debts for which there was no legal liability to pay, and for that reason said sale is void.''

The respondents answered the bill, and denied all fraudulent intent to hinder, delay or defraud complainant or any other creditor of H. Dickinson, and averred that the sale and conveyance of the property was made to them in good faith on the recited consideration, which consideration was paid, and that the property so conveyed was not equal to the indebtedness of the grantees therein named and the indebtedness' they agreed to assume and did assume. In reference to the lease hold of the storehouse, the respondents averred in their answer that H. Dickinson leased said store from Jacob Ramser from the 1st day of September, 1891, to August 31st, 1892, and that said Dickinson was liable on his said contract for the whole year's rent, for the enforcement of which indebtedness the owner, Ramser, had a lien upon the property, the stock of goods in the storehouse, and that, therefore, Dickinson was liable for said rent for the entire year. The respondents further averred that H. Dickinson was liable to George W. Carter and Clarence Black for clerk hire, he having contracted with the former for the period of one year, beginning September 1, 1891, and with the latter for the period of four months, beginning September 1, 1891; and that these were debts of said H. Dickinson, for which he was legally liable, and which respondents assumed and did pay. It was further averred that Long & Rhodes were creditors of H. Dickinson, in that they assumed the debts mentioned in the bill of sale; and that the debt of the respondent, Florence R. Dickinson, was just, legal and *bona fide*, and was for borrowed money; and that the debt due the respondent, S. H. Dent, Jr., was just and *bona fide*, and agreed by said Dickinson to be paid for services rendered as an attorney at law. The respondent's further averred "that even if the assumption of the various debts mentioned in the conveyance was outside of the partnership of Long & Rhodes, which they do not admit, that the debts assumed being just and *bona fide*, and having been paid, the transaction was legal and equitable; and they further say that M. C. Long had authority to contract as she did under the law, even

though she may be a married woman, and that the debts assumed having been *bona fide*, and having been paid, the transaction was fair, legal and equitable:

The evidence introduced tended to substantiate the defense of the respondents, as shown by the averments of their answer ; and to show that the sale of the property by H. Dickinson to the other respondents was in good faith, and was not made to hinder, delay or defraud his creditors. The other facts are sufficiently set forth in the opinion.

Upon the final submission of the cause, upon the pleadings, and proof, the chancellor decreed that the complainant was not entitled to the relief prayed, and ordered his bill dismissed. The complainant appeals, and assigns this decree as error.

A. H. MERRELL, for the appellant.

G. L. COMER, for the appellee.

BRICKELL, C. J.—The original bill was filed by the appellant, and seeks the vacation of a sale of goods and a transfer of choses in action, made by an insolvent debtor for the payment of pre-existing debts. The principles of law applicable to the case are well defined, and are not now matter of controversy. A failing or insolvent debtor, unrestrained by statute, may prefer and pay one or more creditors, though the effect of the preference is the hindrance and delay of all other creditors, or the deprivation of all possibility of their payment from the present assets of the debtor ; and it may be, the result was contemplated and known by the debtor giving, and the creditor accepting the preference. When, as in the present case, the preference is created by a sale, as against existing creditors, to support it, when assailed, the parties claiming the preference, must prove its consideration—that the debt preferred in payment is a just debt, of legal obligation—that the property taken in payment does not in value materially exceed the amount of the debt. These facts being shown, the sale will be supported, unless it is shown that there was a secret trust for the benefit of the debtor, or the reservation of some benefit to him—a benefit not the mere incident of the sale itself. The decisions affirming these principles are

numerous, are well known, and no reference to them is necessary.

The consideration of the sale in part, was the promise of the purchasers to pay the debts of certain creditors of the vendor. The promise was made without the knowledge of these creditors, and of consequence, without acceptance by them. It was binding on the purchasers ; of their ability to perform it there was no doubt, and *pro tanto*, it formed a valuable consideration supporting the sale.—*McCord v. Tennille*, 81 Ala. 16 ?; *Merchant's & Mechanics' Bank v. Coleman, ib.* 170. There was immediate payment of the debts, extinguishing the liability of the vendor, and all the requirements of the law as fully met, as if the debts had been owing the purchasers, and satisfied *eo instanti* the sale.

Security of the payment for the entire term of the rent of the storehouse, in which the goods sold were, and in which the vendor was carrying on business, is not a fact casting any just suspicion on the fairness of the sale. The renting was for a term of one year, a large part of which was unexpired. The landlord had a lien on the goods for the payment of the rent superior to all other liens, except those for the payment of the taxes, which the sale gave him the right to enforce by attachment. (Code, § 3069–70.) The security of the payment of the debt, avoiding the probability of the issue of an attachment and its attendant costs, could not by possibility result in injury to the unsecured or unpreferred creditors. If it had been shown, that the unexpired term was of greater value than the rent, a different question would be presented. Carter and Black had been employed by the vendor as clerks for a particular time, at stipulated wages, the term not having expired. The contract was entire, creating a liability on the vendor for the stipulated wages. The vendor could not of his own volition, rescind or modify the contract—he could not by creating a necessity in which their services would not be of the value or use he may have contemplated, convert it into a contract for a shorter term, lessening their wages. These were just debts, payment of which the vendor could rightfully prefer.

The purchase of the goods cannot properly be said to be without the scope of the partnership of Long & Rhodes. Such a purchase is ordinarily within the

scope of all partnerships formed for and pursuing the busines of buying and selling merchandise. Having the power to purchase, the partnership was not limited to any particular mode of paying the price—whatever mode was in accordance with the usages of trade could be adopted, binding the partnership in its entity, though the transaction was conducted by one partner only.

The debt of the vendor to his wife is clearly proved; indeed we do not find in the argument of counsel, any disputation of its existence and validity. The husband could prefer her in payment—he was under no duty to leave her unpaid, that other creditors, to whom he did not owe duties corresponding to the duties of the relationship, might be paid.

We have examined the evidence, and if we concede there are badges of fraud, circumstances of suspicion attending the transaction, these are of no importance in the presence of clear evidence of the existence of the preferred debts, that they were a fair equivalent for the goods and choses in action, which were sold and transferred, and that the object and purpose of the sale and transfer, an object and purpose which have been accomplished, was the payment of the debts. Each case of this character is dependent largely on its own facts and circumstances—no two of them are twin brothers; and a discussion of the facts of one, can afford but little aid in determining another, and can but seldom form a precedent of value. We abstain from any further reference to the evidence, and simply announce our concurrence in the conclusions of the chancellor. Let the decree be affirmed.

107 272
120 33

107 272
125 576

107 272
131 70

107 272
136 625