**ALABAMA CREDIT CORPORATION, d/b/a Fidelity Securities Corporation, Plaintiff-Appellant,**

v.

**Ruth M. DEAS et al., Defendants-Appellees.**

**No. 26783.**

United States Court of Appeals Fifth Circuit.

Oct. 7, 1969.

Willis C. Darby, Jr., Kilborn, Darby & Kilborn, Mobile, Ala., for plaintiff-appellant.

John E. Adams, Adams, Gilmore & Adams, Grove Hill, Ala., Pat Crim, Thomasville, Ala., for defendants-appellees.

Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District Judge.

CARSWELL, Circuit Judge:

We are called upon here to review the findings and judgment of the district court which denied appellant's contentions that a deed to Alabama real estate should be set aside as a conveyance in fraud of creditors.

Appellant also seeks reversal from the district court's refusal to award a money judgment against appellees Pat Crim and Alex Goodman for the entire amount of appellant's loss arising from the advancement of money to Ruth M. Deas in connection with the operation of her business.

Disposing of the latter point of appeal first, we find that the findings and conclusions of the trial court with regard to Alex Goodman and Pat Crim were supported by the record and we therefore affirm.

The multitude of transactions in the present case are highly involved and complicated. Since they are stated quite clearly in the lower court's opinion, we will set them out here only briefly.

Plaintiff below sought a money judgment against Ruth M. Deas, William T. Deas, James M. Deas, Jr., Sally Deas, Alex Goodman, Pat Crim and James M. Phillips on the basis of various financial transactions. These transactions began in 1959 when the business of the Thomasville Motor Company, Inc., owned principally by James M. Deas, Sr., the former husband of Ruth M. Deas, was discontinued and defendant Ruth M. Deas began operating an automobile sales agency as a sole proprietorship under the name of Thomasville Motor Company. Defendants William T. Deas, James M. Deas, Jr., and Sally Deas are the children of Ruth M. Deas, and were not involved in the operation of the automobile business. Defendants Alex Goodman and Pat Crim were employees of Ruth M. Deas. Defendant James M. Phillips was an employee of plaintiff and a separate money judgment was rendered against him. Phillips v. Alabama Credit Corporation, 403 F.2d 693 (5th Cir., 1968).

Plaintiff advanced money to Ruth M. Deas in connection with the operation of her business. Some of this money was in the form of direct loans to her secured by chattel mortgages upon motor vehicles owned by her. Many of these vehicles were sold on conditional sales contracts which plaintiff purchased from her, with recourse upon her if the automobile purchaser failed to meet his payments. The record shows many repossessions of vehicles by plaintiff due to defaulted payment by the purchaser, the return of the vehicle to Ruth M. Deas and failure on her part to reimburse plaintiff. Upon the realization that Mrs. Deas was unable to meet her obligations to plaintiff, defendants James M. Phillips, Alex Goodman and Pat Crim with Mrs. Deas began the practice of concealing her defaults by the execution of fictitious contracts, to which were signed the names of various parties, including her three children. The trial court found, and the record supports the findings, that her children had no knowledge that this practice was being pursued

nor that their names were being signed to the fictitious contracts. When the operation finally collapsed, defendant Ruth M. Deas was highly indebted to plaintiff.

The district court awarded plaintiff money damages against Ruth M. Deas in the amount of $135,977.10 plus interest computed at six percent from March 1, 1964 for a total of $170,521.31. Plaintiff was also allowed recovery from defendant Alex Goodman of $3,759.87 plus interest computed at six percent from March 1, 1964, for a total of $4,713.63. No recovery was awarded against William T. Deas, James M. Deas, Jr., or Sally Deas nor was a money judgment rendered against defendant Pat Crim.

■ It is clear that the district court, as the trier of fact, had before it adequate testimony to support its finding that appellee Goodman participated in and personally profited by at least two of the fictitious contracts. Goodman admitted that he financed part of his house with the proceeds of these contracts and the amount thereof found by the Court was $3,759.87 which was the amount of the judgment against Goodman. This figure is supported by the record, from Goodman's deposition and his testimony at the trial. While there was some other evidence to the effect that Goodman participated with Mrs. Deas in other fictitious transactions, the court was justified in placing financial responsibility for those upon Mrs. Deas who received the benefit therefrom. We cannot say that these findings are clearly erroneous and appellant's attack on the judgment against Goodman must, therefore, fail.

■ With respect to the appellee, Pat Crim, there is a surface ambiguity in the trial court's opinion and the formal judgment, but a careful analysis convinces us that it was not error to deny a money judgment against Crim. In its opinion, which is quite clear in all other respects, the court states that " * * * money judgments will be rendered for the plaintiff against Ruth M. Deas, Alex Goodman and Pat Crim in the amounts hereinafter designated." In the formal judgment of the Court, it is stated, after awarding $135,977.10 with interest against Mrs. Deas and $3,759.87 with interest against Goodman "3 * * * the plaintiff recover nothing from defendants Pat Crim * * *" and others not pertinent here.

A thorough reading of all the findings makes it clear that the trial judge found that Crim's participation in the fictitious business was very limited and from which he profited nought and for which personal responsibility was properly placed on Mrs. Deas in the judgment rendered against her. The testimony *in toto* concerning Crim's activities is scant and unconvincing. Crim was not called to testify at all. Goodman merely testified that Crim's signature was on a contract as a purchaser of a car. One exhibit was exhibited as a "group of installment contracts on Pat M. Crim." These were account cards which were not otherwise related to Crim or the scheme of Mrs. Deas and they do not show fraud on their face. From this, we cannot say there was clear error in finding that nothing be awarded appellant against Crim. The Court is therefore affirmed on this issue.

With the aura of fraud thus pervading the record as it refers to Mrs. Deas' automobile business we have felt compelled to scrutinize meticulously the facts concerning her conveyance of farm lands to her children in the light of the controlling law of Alabama.

Prior to 1959, the farm land was owned by James M. Deas, Sr., former husband of Ruth M. Deas. In 1959, he conveyed the property to Jackson Sawmill Company, Inc., in lieu of foreclosure of a mortgage. In connection with the conveyance, an option was procured granting to said James M. Deas, Sr., Ruth M. Deas and their three children the right to repurchase the property within two years from May 22, 1959.

As the date for the expiration of the option approached, the two boys, William

T. and James M. Deas, Jr., still minors, requested their mother, Ruth M. Deas, to exercise the option and purchase the farm lands for the three children. Each of the three children at that time had modest savings accounts, and were the beneficial owners, subject to an outstanding encumbrance of about $30,000 of the lot and building in which Ruth M. Deas was conducting her motor company operation.

The purchase of the Deas farm land was accomplished in May of 1961 by Ruth M. Deas by making a $52,000 cash payment and obligating herself to pay $157,000 within two years. Of the $52,000 cash payment, $30,000 was produced from a loan procured from a bank, primarily on the security of the motor company property of which the children were beneficial owners; $8,400 was derived from the children's savings accounts, each child withdrawing $2,800; and $13,600 was derived from a savings account which had been created for Ruth M. Deas by her mother.

The court found, and the evidence clearly establishes, that although Ruth M. Deas took the title to the farm lands in her own name, $38,400 of the cash payment was derived from the children's savings accounts and from a loan secured primarily by property of which the children were beneficial owners and that Ruth M. Deas and the children, immediately upon purchase, all regarded the children as having become the owners of the property, subject to the encumbrance in favor of Jackson Sawmill Company, Inc.

On May 14, 1962, the nonage disabilities of William T. and James M. Deas, Jr., were removed by decree of the Circuit Court of Clarke County, Alabama, and on July 3, 1962, the conveyance in question was performed. The consideration for this conveyance was the forgiveness by the children of Ruth M. Deas' indebtedness to them in the sum of $38,400, and the assumption by the children of their mother's obligation to the Jackson Sawmill Company, Inc., in the amount of $157,000, which the children did pay later.

Although numerous inconsistencies existed in Alabama law concerning the burden, nature and effect of proof with respect to the consideration paid by an allegedly fraudulent grantee, the case of Smith v. Wilder, 270 Ala. 637, 120 So. 2d 871 (1960), attempted to clarify the law on the subject. In that case it was held that an existing creditor, which the record shows appellant in the present case to be, seeking to set aside a conveyance may do so either because of actual fraud or constructive fraud.

Actual fraud means actual intent to defeat or delay the rights of creditors. Constructive fraud is based upon facts and circumstances which the courts hold as constituting legal fraud irrespective of actual intent. This latter term is generally used with reference to those instances where a grantor, who is indebted at the time, conveys property on a good, as distinguished from a valuable consideration. Such a conveyance is often referred to as a voluntary conveyance. Smith v. Wilder, supra, at 882.

Where actual fraud is alleged as the ground upon which to set aside the conveyance the burden is upon the creditor to prove it. It is not sufficient merely to charge an intent to hinder, delay or defraud creditors. Rather, the charge must plainly show the facts which constitute the fraud. Smith v. Wilder, supra, at 882, 883. This the plaintiff below did not do. As indicated above, the trial court specifically found, and the record contains nothing to show that the finding was clearly erroneous, that there was no evidence indicating any intention on the part of appellees to hinder, delay or defraud creditors with respect to the Deas farm land conveyance.

Where constructive fraud is alleged, i. e., where the conveyance is sought to be vacated on the ground that it was voluntary, the plaintiff has the burden to show that his debt was antecedent to the conveyance attached.

When this burden is met, the burden to go forward with the evidence shifts to the grantee. When the evidence shows, as it did in the case at bar, that the grantor was insolvent, failing or financially embarrassed at the time he made the conveyance, the grantee has the burden of showing a valuable and adequate consideration. Smith v. Wilder, supra, 883. Where a fraudulent conveyance is charged, the burden of proof that there was a valuable and adequate consideration for the transfer rests upon the grantee. Murphy v. Pipkin, 191 Ala. 111, 67 So. 675 (1914). Upon the discharge of this burden by the grantee, the burden of proof then shifts back to the creditor to show that the grantee knew of the grantor's fraudulent intent or of such facts as put him upon inquiry which, if pursued, would have disclosed such fraudulent intent. Ledbetter, et al. v. Davenport Bros., et al., 154 Ala. 336, 45 So. 467 (1908).

Upon an analysis of the evidence introduced with regard to these respective burdens, we cannot hold that the trial court's findings of fact and conclusions of law were clearly erroneous. The burden to prove that the conveyance was supported by adequate and valuable consideration was met by the grantees by showing both the assumption and the actual payment of the debts of the grantor, which are valid considerations in Alabama. National Bank of Republic v. Dickinson, 107 Ala. 265, 18 So. 144 (1895). As noted above, when Ruth M. Deas purchased the property in her own name, $38,400 of the total cash payment of $52,000 was derived from her three children, $8,400 from their personal savings accounts and $30,000 borrowed primarily on the security of their property. She thereby became indebted to her children in the amount of $38,400. The satisfaction of that indebtedness, along with the assumption by the children of the grantor's obligation to the Jackson Sawmill Company, Inc., in the amount of $157,000, supplied the consideration for the conveyance of July 3, 1962.

After the grantees showed they had paid a valuable and adequate consideration, it then became the appellant's duty to prove any of the following: that the grantees had actual knowledge of the grantor's fraudulent intent, assuming such intent could have been proven; that the grantees had knowledge of such facts to put them upon inquiry which, if followed, would have disclosed fraudulent intent on the part of the grantor; or that there was such a disparity between the total consideration paid and the value of the property as would taint this conveyance with fraud.

Again, plaintiff below did not meet this obligation of going forward with the evidence to prove any of the above. Appellant contends that an adequate consideration would be nothing less than the full value of the Deas farm land. However, the record shows no instance where plaintiff below affirmatively sought to prove that the value of the land in question was more than the consideration received by the grantor. The record shows that a "timber survey and appraisal" was made of the Deas farm land, but that Deas, Sr., testified that, "We have it. We don't have it with us." We find nothing in the record to indicate that appellant ever asked defendants or Deas, Sr., what value the appraiser placed upon the land, nor were defendants asked to produce the appraisal.

Defendants were only required to produce clear and convincing evidence that the conveyance was founded upon valuable and adequate consideration. This required defendant to produce such evidence as would convince the trier of fact of the truth of their contention. In the absence of any proof to the contrary, the trial court was justified in finding that "there is no such disparity between the total consideration thus paid and the value of the property as would taint this transaction with fraud."

Affirmed.