This case involves the consolidation of actions brought by two creditors to set aside an allegedly fraudulent conveyance of certain property conveyed from a husband, Mr. Sprayberry, to his wife, Mrs. Sprayberry. The trial court directed a verdict in favor of the plaintiff creditors on *Page 1113 
the issue of whether or not there was a fraudulent conveyance. The sole issue presented to the jury was whether and to what extent Mrs. Sprayberry used her personal funds to make payments on the mortgage. The jury found that Mrs. Sprayberry had not made any payments on the property either before or after the conveyance. The only issue on this appeal is whether there is a scintilla of evidence that Mrs. Sprayberry furnished valuable consideration for the property in question. We find that there is not even a scintilla of evidence that the conveyance was supported by valuable consideration and affirm the judgment entered by the trial court. Assuming, however, there was a scintilla of evidence that Mrs. Sprayberry furnished valuable consideration for the conveyance to her, appellants have shown no prejudice requiring reversal, because the jury found that Mrs. Sprayberry had not made any payments on the mortgage indebtedness to the mortgagee.
The facts in this case are as follows: The property in question is a commercial building in which Mr. Sprayberry had operated a tire store. Mr. and Mrs. Sprayberry purchased this property in 1976 for $52,000, paying $5,000 down and executing a mortgage to the seller for the remaining $47,000.
In 1981, the Sprayberrys entered into a lease/purchase agreement to sell the property, receiving $5,000 down and $1,500 per month during the lease term. From this amount the Sprayberrys continued to pay their mortgage. That same year, Mr. Sprayberry refinanced several of his business debts with appellee First National Bank of West Point, Georgia.
On May 7, 1981, he executed a promissory note to the bank to be repaid in monthly installments of $200.39. Mr. Sprayberry made the first payment, but then defaulted. In 1981 Mr. Sprayberry also defaulted on his business account with appellee Carroll Tire Company. On September 29, 1981, Carroll Tire Company obtained a judgment against Mr. Sprayberry in the amount of $3,653.73. In connection with this judgment, Mrs. Sprayberry filed an affidavit on November 16, 1981, in which she disavowed any connection with her husband's company.
After the Sprayberry's first purchaser/lessee vacated the property, they found two other lessees who agreed to pay $250 per month rent. From this amount, the Sprayberrys continued to make their mortgage payments.
On March 25, 1982, Mr. Sprayberry conveyed his one-half interest in the property to his wife. It is this conveyance which the creditors/appellees sought to have set aside, asserting that it was without consideration and that its sole purpose was to prevent their attachment of the property or the rental payments.
The Sprayberrys argue that the consideration for the transfer of the property was Mrs. Sprayberry's assumption of the mortgage on the property, which at the time amounted to $17,000. They rely on Alabama Credit Corp. v. Deas,417 F.2d 135 (5th Cir. 1969). In Deas, a creditor sought to attack a transaction wherein a woman conveyed certain property to her children. The court found that the woman's conveyance to her children was not fraudulent, because, although she took title in her name when the property was purchased, the majority of the down payment was derived from her children's savings. The consideration for the questioned conveyance was the forgiveness by the children of the woman's indebtedness to them and the assumption of their mother's obligation for the remaining balance.
We have carefully examined the record and find that the evidence indicates that Mrs. Sprayberry had no income from which she could have paid the "assumed debt." In addition, although Mrs. Sprayberry alleges that she made the initial $5,000 down payment from money she had saved, she could not account for how or where she acquired this money. She acknowledged that she had not maintained regular employment for at least ten years prior to the purchase, and did not have a checking or savings account, because as soon as she *Page 1114 
deposited money, she would have had to take it out to pay bills. In her deposition, Mrs. Sprayberry testified that she had the $5,000 down payment in a fruit jar buried in her back yard. At trial, she admitted to misrepresenting this fact, stating that she had just been "kidding." Mrs. Sprayberry contends that the evidence shows that she made some monthly payments after 1979, and all of the payments since March 1982; however, Mr. Sprayberry, when questioned, admitted that the payments were made from income of Mr. Sprayberry's business.
In the alternative, the Sprayberrys contend that the transaction in question was an execution of a constructive trust in which Mr. Sprayberry, the legal owner of one-half of an undivided interest, held the property for the use and benefit of Mrs. Sprayberry and/or her sons, the actual and beneficial owners. We find no merit to this argument.
A constructive trust is a device used "to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." Putnam v. Putnam, 274 Ala. 472, 150 So.2d 209 (1963). A constructive trust is a fiction of equity which prevents unjust enrichment, and it will be applied when property has been acquired by fraud or where it would not be equitable to allow it to be retained by the person who holds it. Seals v. Seals, 423 So.2d 222 (Ala. 1982).
The only evidence presented to support the Sprayberrys' constructive trust theory is as follows:
Mr. Sprayberry testified that his wife and sons bought the property and it was in Sprayberry's name because his sons were too young "to put it in [their names]."
We find that this evidence alone does not create a reasonable inference which would warrant a jury's determination of the case under this theory. In considering the propriety of a directed verdict, the appellate court's standard of review is as follows:
 "A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. In considering a motion for directed verdict, the court must apply Rule 50 (e), ARCP, under which `a question must go to the jury, if the evidence, or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, . . . or a scintilla in support of the theory of the complaint. . . ."
Caterpillar Tractor Company v. Ford, 406 So.2d 854, 856 (Ala. 1981). (Emphasis added; citations omitted.) Evidence, however, which affords nothing more than mere speculation, conjecture, or guess is insufficient to warrant the submission of a case to the jury. Headrick v. United Insurance Co. of America, 279 Ala. 82, 181 So.2d 896 (1966).
In this case, we find no reversible error to reverse on the part of the trial judge. His judgment is, therefore, due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
 ON APPLICATION FOR REHEARING