MOORE, Chief Justice
(dissenting).
Marvin Nikia Gaston was convicted of felony murder, see § 13A-6-2(a)(3), Ala. Code 1975, and first-degree assault, see § 13A-6-20, Ala.Cóáé 1975. Gaston was sentenced to 30 years’ imprisonment on each conviction, the sentences to run concurrently, and he was ordered to pay $8,140 :in restitution and $50 to the (jrime Victims Compensation Fund. On appeal, the Court of Criminal Appeals affirmed Gaston’s convictions and sentences in an unpublished memorandum, reasoning, among other things, that Gaston failed to preserve for appellate review his objection that his accomplice’s testimony was not corroborated. Gaston v. State (No. CR-11-0823, Dec. 13, 2013), 173 So.3d 5 (Ala.Crim.App.2013) (table). This Court issued a writ of certiorari to review the Court of Criminal Appeals’ decision but now quashes the writ. Because I do not believe the State presented sufficient evidence to convict Gaston, I respectfully dissent.
On the evening of June 13, 2009, Marvin Gaston, Samdriquez Hall, Jemario Mushat, Seandarius Savage, and Pete Mungro were riding around Montgomery in a blue GMC *520 Yukon sport-utility vehicle (“the SUV”) that belonged to Gaston’s aunt, who had allowed Mungro to borrow it. At approximately 10:00 p.m., Gaston and his companions stopped at a Pace Car gasoline station on Narrow Lane Road. While they were putting gasoline into the SUV, Hall was involved in a brief altercation with LaQuin-ta Shuford. Hall punched Shuford, yelling “f[* * *] Court Block,” an apparent reference to á gang whose area’is South Court Street in Montgomery. Shuford’s girlfriend, Kimberly Manor, intervened and stopped the situation from escalating.
Shuford testified that he then reached for his cellular telephone and that, when he did so, Mungro approached Shuford holding his belt, as if “he had a gun tucked under his belt.” Apparently, Mungro believed that Shuford was reaching for a gun. Savage intervened and told Mungro that Shuford did not have a gun and that he was not threatening them. Shuford and Manor returned to their vehicle, and Mungro, Hall, and their companions (including Gaston) returned to the SUV. As Manor was driving‘her vehicle away from the gas station, the SÜV pulled up' beside her vehicle. Manor heard someone yell, “B[* * * *], pull over.” Manor looked to her left, where she saw Mushat pointing a gun out of the passenger-side front window of thé SUV. Mushat fired a shot, which hit Manor’s vehicle. Nobody was injured, and the SUV sped away.
Manor testified that she did not know Gaston, that she could not identify him as an occupant of the SUV, that he did not threaten her at the gas station, that she did not see him with a gun, and that he did not aid “in anything that went on” that night. Likewise, Shuford testified that there was no “bad blood” between him and Gaston. Shuford also testified that he could not implicate Gaston in the events of June 13, 2009. When asked to describe Gaston’s involvement in the gas-station altercation, Shuford testified that Gaston was merely in the “[w]rong place at the wrong time.”
Between 30 to 60 minutes after the incident at the Pace Car gas station, Steve Arrington • and Terrance Ponder were heading westbound on East Boulevard in a Buick Roadmaster automobile. Arrington testified that, after he and Ponder went through a traffic light near the Pace Car gas station on Narrow Lane Road, the blue SUV carrying Gaston and his companions came up behind them and tried to run them off the road. Occupants of the SUV fired' shots-at the Roadmaster and eventually came alongside it on the left, at which point the vehicles collided. More shots were fired into the Roadmaster, and the SUV then sped away. Arrington was wounded and Ponder was killed as a result of the shooting. Arrington was unable to say which occupants of the SUV had fired the shots. Arrington also testified that he did not know Gaston.
Mungro returned the SUV to Gaston’s aunt sometime between 11:00 p.m. and 12:00 a.m. that night. The SUV had sustained damage to its right rear-quarter panel. The following day, Mungro told Gaston’s aunt to put the SUV in her backyard and instructed her not to open the door of her house for anyone.
Police confirmed that the Roadmaster had been shot 19 times. Police also recovered seven shell casings from the area in which the shooting occurred. Adam Groom, a forensic scientist with the 'Department of Forensic Sciences, testified that the shell casings appeared to be fired from three different weapons. However, police were unable to connect the ejected shells to any firearms that were seized during the investigation; therefore,' they were unable to connect the shell casings or bullets to any of the occupants of the SUV.
*521 Sgt. Michael Myrick of the Montgomery Police Department testified that Gaston voluntarily gave a statement to the police during the investigation of the incident. According to Sgt. Myrick, Gaston admitted that he had been riding around in the SUV earlier on the evening of the shooting. However, Gaston denied any knowledge of the shooting, claiming that he and Mushat had been dropped off before the time at which the police indicated the shooting occurred.
Gaston and his companions were arrested for their involvement in the shooting. Gaston was charged with the felony murder of Ponder- and with first-degree assault as to Arrington. The State’s theory of the incident was that Shuford’s friends and Gaston’s friends were members of rival groups and that the encounter at the Pace Car gas station prompted Gaston and his companions to look for ¡other members of Shuford’s group to harm, which led to the shooting of Arrington and Ponder. Gaston and Hall were tried together but were represented by different counsel. During her opening statement, Gaston’s counsel told the jury that Gaston would not dispute either that he was present during the incident at the Pace Car gas station or that he was in the SUV when Arrington and Ponder were shot. • ■ ■ ■
Mushat, who had pleaded guilty to Ponder’s murder and to Arrington’s assault, testified for the' State at Gaston’s trial. Mushat testified that, when the shootings of Arrington and Ponder occurred,- three people were sitting in the backseat of the SUV, that Gaston was one of them, and that Gaston was sitting behind the driver. Mushat said he was sitting in the front passenger seat. Mushat testified that shots were fired from the backs'eat out of the rear passenger window (which could be lowered only halfway), but he was unable to say which of the three men in the backseat fired the shots. Mushat also provided the following on cross-examination:
“Q. You’re not saying Mr. Gaston had a gun, are you?
“A. No ma’am. ’ ■
“Q. You’re not saying Mr. Gaston shot at anybody that night, are you?
“A. No ma’am. ¡
“Q.. You’re not saying that he was the person who instigated a fight with [Shuford] at Pace Car?
“A. No ma’am,
“Q.- You’re not saying he was the one who was driving, following Ponder and Arrington in that car after [they left] Front' Street [a nightclub]?
“A. No, ma’am.
[[Image here]]
“Q. And you’re not saying that any time that he ¡[Gaston] is leaning out of the window or shooting out of the passenger side of the car?
“A. No, ma’am. ■
“Q. In fact,.you never put him on the passenger side of that vehicle,' do you?
“A. No, ma’am.”
The State also introduced a letter Mus-hat admitted to authoring in part and sending to Gaston while they were both in jail. The letter urged Gaston to agree with Mushat that Mungro was the shooter and that Savage was the driver.
At the .close of the State’s evidence, Gaston mqved for judgments of acquittal, arguing that the State could not establish that he was involved.in the shootings of Arrington and Ponder. Specifically, Ga-ston’s counsel commented three times that the State failed to make a “prima facie showing” that Gaston was complicit in the shootings of Arrington and Ponder. Ga-ston’s counsel, also presented detailed ar *522 guments as to why the evidence was insufficient to convict Gaston. As part of the “prima facie showing” argument, Gaston’s counsel also discussed Mushat’s testimony in detail and concluded that .Mushat “has no information to show that Mr. Gaston or at least no testimony was solicited that he either encouraged, promoted, assisted or [in] any other manner was complicit in the actions — or the injuries caused to Mr. Ponder and Mr. Arrington.” The trial court denied Gaston’s motion.
As part of his defense, Gaston called Robert Scott, an automobile mechanic who had worked on the SUV. Scott testified that the rear driver-side door window on the SUV was manufactured in such a way that it lowered only about five inches. Scott also testified that the door handle on the rear driver-side door was broken and could not be opened from the inside. Thus, according to the defense, Gaston was unable to get out of the SUV without assistance from someone outside the vehicle.
At the close of all the evidence, Gaston renewed his motion for judgments of acquittal on both charges. The trial court again denied Gaston’s motion. The jury found Gaston guilty of first-degree assault and felony murder. The trial court sentenced Gaston to 30 years’ imprisonment on each conviction, the sentences to run concurrently.
On appeal to the Court of Criminal Appeals, Gaston argued, among other things, that the trial court erred in denying his motions for judgments of acquittal. In the “Statement of the Issues” section of his brief to the Court of Criminal Appeals, Gaston framed the issue as follows: “The trial court erred in denying Gaston’s motion for a judgment of acquittal where, excluding the accomplice testimony, the State failed to present legally sufficient evidence that Gaston acted either as a principal or accessory as to the offenses at bar.” After discussing the applicable law, Gaston began his analysis by arguing that, “subtracting Jemario Mushat’s accomplice testimony, the State failed to present sufficient evidence to connect Gaston to the commission of the offense.”
Gaston then presented the following supporting arguments: (1) that, although the State presented evidence indicating that Gaston was in the SUV when the incident at the Pace Car gas station occurred, it presented no corroborating evidence to show that Gaston was in the SUV when the shootings of Arrington and Ponder occurred; (2) that there was no physical or forensic evidence connecting Gaston to the offenses; (3) that, even if the jury believed that Gaston was in the vehicle at the time of the shootings, all the evidence placed him in the backseat on the driver’s side of the SUV, whereas the gunfire came from the passenger’s side of the SUV; and (4) that none of the remaining evidence, if the accomplice testimony is subtracted, suggested that Gaston was guilty of the criminal offenses for which he was charged. Gaston concluded the argument section of this issue as follows: “Unlike his codefendant and alleged accomplices, there is no evidence indicating that Gaston took any action at any point in the evening, either by cursing, hitting, driving, or shooting. The evidence does nothing to actually connect Gaston to the commission of the offenses.” Gaston therefore concluded that his motion for judgments of acquittal should have been granted and requested that the Court of Criminal Appeals reverse his convictions and sentences and render judgments of acquittal in his favor.
In its unpublished memorandum, the Court of Criminal Appeals framed this issue as follows:
“Gaston contends that the trial court erred in denying his motion for judg- *523 merits of acquittal because, he says, the State’s evidence was insufficient to support a finding of guilt. Specifically, ■Gaston argues that the State did not produce evidence to corroborate the testimony of accomplice Jemario Mus-hat, as required by § 12-21-222, Ala. Code, 1975....” ...
Citing Marks v. State, 20 So.3d 166, 172 (Ala.Crim.App.2008), the Court of Criminal Appeals held that Gaston. failed to preserve this issue for appeal because he challenged only the sufficiency of the evidence at trial, without specifically arguing that Mushat’s testimony was uncorroborated.
Gaston petitioned this Court for a writ of certiorari, which this Court granted on August 28, 2014.
‘““Appellate courts ape limited in reviewing a trial court’s denial of a motion for judgment of acquittal grounded on insufficiency.” McFarland v. State, 581 So.2d 1249, 1253 (Ala.Crim.App.1991). “The standard of review in determining sufficiency of evidence is whether evidence existed at the time [the defendant’s] motion for acquittal was made, from which the jury could by fair inference find the [defendant] guilty.” Linzy v. State, 455 So.2d 260, 26[2] (Ala.Crim.App.1984) (citing Stewart v. State, 350 So.2d 764 (Ala.Crim.App.1977), and Hayes v. State, 395 So.2d 127 (Ala.Crim.App.), writ denied, 395 So.2d 150 (Ala.1981)). In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State. Linzy, supra.’
“Ex parte Burton, 783 So.2d 887, 890-91 (Ala.2000).
“ ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).”
Ex parte Williford, 931 So.2d 10, 13 (Ala.2005) (alterations in original).
Gaston argues, among other things,'that Marks and Ex parte Weeks, 591 So.2d 441 (Ala.1991), upon which Marks was básed, are. dúe to be overruled because, he says, they are inconsistent with decisions of this Court addressing preservation of the issue of sufficiency of the evidence for appellate review. In Ex parte Maxwell, 439 So.2d 715, 717 (Ala.1983), this Court stated the general rule for preserving an objection to the sufficiency of the evidence:
“To preserve the issue for appeal, it is necessary for defendant to state his grounds upon moving to exclude evidence; however, it is not necessary to draw the trial court’s attention to the particular defect. It is sufficient that the defendant state the ground that the prosecution has failed to make a prima facie case.”
This general rule in Maxwell has been cited favorably many times by this Court. See, e.g., Ex parte Parks, 923 So.2d 330, 334 (Ala.2005); Ex parte McNish, 878 So.2d 1199, 1200-01 (Ala.2003); Ex parte Hall, 843 So.2d 746, 748-49 (Ala.2002); and Ex parte Johnson, 620 So.2d 665, 668-69 (Ala.1993).
However, in Ex parte Weeks, 591 So.2d at 442, this Court, almost in passing, effectively held that a general motion for a judgment of acquittal is insufficient to preserve for appellate review the issue whether an accomplice’s testimony was sufficiently corroborated] Weeks did not quote from, cite to, or even mention Maxwell. Since Weeks was decided in 1991, this Court has never cited Weeks again in any of its decisions involving the issue before us. . ,
The Court of Criminal Appeals examined Weeks carefully in Marks, interpreting Weeks to mean that an objection to the sufficiency of the evidence does not pre *524 serve the specific issue of accomplice corroboration. Although the Marks court held that Weeks was an “anomaly” in the precedent of this Court, it nevertheless felt bound to follow Weeks on the specific issue of preservation of the issue of accomplice corroboration for appellate review. Marks, 20 So.3d at 172. As noted above, the Court of Criminal Appeals in the present case based its decision on Marks and, in turn, on Weeks.
Section 12-21-222, Ala.Code 1975, provides: “A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.” In other words, if' a conviction for a felony is based on an accomplice’s testimony, then there must be corroborating evidence tending to connect the defendant with the commission of the offense. It would appear, then, that if the State does not present such corroborating evidence, it has not presented sufficient evidence to send the question of the defendant’s guilt to the jury. If this is true, then it is, difficult to justify Weeks (and subsequently Marks)[1]
In the appropriate case, this. Court should consider overruling Weeks and Marks. However, I believe it is not necessary in this case to overrule Weeks and Marks because, even if Mushat’s testimony was sufficiently corroborated,[2] I believe that the State still failed to.present sufficient evidence that Gaston was guilty of the crimes 'with which he was charged. Mushat testified that Gaston was in the SUV at the time of the shooting, that Gaston was sitting in the backseat behind the driver, and that the shots came from the backseat, although he could not tell who was firing the shots.- Mushat did not testify that Gaston fired the shots that killed Ponder or wounded Arrington, that Gaston fired any shots at all, or that Ga-ston even had a gun. - Moreover, Mushat did not testify to anything from which the jury could reasonably infer that Gaston aided, abetted, or encouraged those who did fire the shots. In other words, Mushat testified only that Gaston was in the SUV when the crimes occurred,' and “mere presence at the scene of a crime is not enough to support a conviction.” Ex parte Smiley, 655 So.2d 1091, 1095 (Ala.1995).
Yet even taken together with Mushat’s testimony, the other evidence in this case ¡was also insufficient to allow a reasonable jury to find beyond a reasonable doubt that .Gaston was guilty of the charged offenses. • Shuford testified merely that Ga-ston was present at the Pace Car gas station 30 to 60 minutes before the, shootings. Shüford testified that there was no “bad blood” between him and Gaston and that Gaston was merely in the wrong place at the wrong time. Manor likewise testi- *525 fíed that Gaston was not involved in the altercation at the gas station. Although a jury might reasonably infer that, based on the gas-station altercation, Gaston would have a desire to harm others who did have “bad blood” with his friends, a jury would have to make yet another inference that Gaston committed the wrongful acts for which he was charged. See Systrends, Inc. v. Group, 8760, LLC, 959 So.2d 1052, 1074 (Ala.2006) (noting that an “‘“inference” is a reasonable deduction of fact, unknown or unproved, from a fact that is known or proved,’ ” but that an “ ‘ “inference cannot be derived from another inference” ’ ” (quoting Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1224 (Ala.1992))).
Also, Sgt. Myrick testified that Gaston admitted to riding around in the SUV that evening but told him that he and Mushat were not in the SUV when the shooting occurred. Because the jury knew that Mushat pleaded guilty, 'the jury could reasonably infer that Gaston lied to Sgt. Myr-ick about that fact. Nevertheless, the jury would have to make another inference based on that inference to determine that Gaston was guilty of the crimes with which he was being charged.
Likewise, even assuming that the shells found at the scene of the shooting could be connected to the occupants of the SUV, the evidence showed that the shots came from three different weapons. Because there were five occupants of the SUV, the jury would have had to guess which of the occupants fired the shots. There is a difference between reasonably inferring guilt from the evidence presented, Which is permissible, and completely guessing, which is not. See Systrends, 959 So.2d at 1074 (noting that a jury “might draw reasonable inferences from the facts established by the evidence” but that “ ‘ “[ejvidence ... which affords nothing more than mere speculation,, conjecture, or guess is insuffh cient to warrant the submission of a case to the jury” ’ ” (quoting Finley v. Patterson, 705 So.2d 826, 830 (Ala.1997), quoting in turn Sprayberry v. First Nat’l Bank, 465 So.2d 1111, 1114 (Ala.1984))).
-In short, the State wholly failed to present evidence indicating that Gaston fired the shots that killed Ponder and wounded Arrington,'which are the wrongful acts for which Gáston was tried. The jury could not reasonably infer that Gaston shot Ar-rington and Ponder just because he was present in the vehicle. “[M]ere presence at the scene of á crime is not enough to support a conviction.” Smiley, 655 So.2d at 1095. Given the lack of evidence in this ease, no jury could find beyond a reasonable doubt that Gaston committed either of the crimes with which he was charged; therefore Gaston’s motion for judgments of acquittal was due to be granted.
Likewise; there was not .sufficient evi-, dence to find Gaston guilty under the theor ry of aiding and abetting. . ,
“A person is legally accountable for the behavior of another constituting a criminal' offense if, with the intent to promote or assist the commission of the offense:
[[Image here]]
“(2) He aids or abets such other person in committing the offense.”
§ 13A-2-23, AkCode 1975.
f“In order to. convict [a defendant] under this complicity provision, ‘the State must adduce some legal evidence implying that he either recruited, helped or counseled in preparing ... [to commit the crime] or undertook some part in its commission.. Criminal agency in another’s offense is not shown merely by an exhibition of passivity.’”
Jones v. State, 481 So.2d 1183, 1187 (Ala.Crim.App.1985) (quoting Pugh v. State, 42 *526 Ala.App. 499, 502, 169 So.2d 27, 30 (1964)) (second alteration in the original).
The prosecutor told the jury during his closing argument:
“If you don’t even want to address the issue of who pulled the trigger, it does not matter.
“Under the theory of aiding and abetting ... when you offer any sort of .assistance, support, any sort of encouragement — and you don’t actually have to say I hereby assist you, I support you in this, here use my gun; you don’t have to say those things — it can be implied — but with that, that means you do not have to put a gun in one of their hands.”
The State still failed to present evidence indicating that Gaston provided any assistance, support, or encouragement, in the commission of these crimes.
It is not abundantly clear in this case whether Gaston was challenging only the Court of Criminal Appeals’ holding that he had waived the argument that Mushat’s testimony was not sufficiently corroborated or whether he was also bringing to us the ultimate issue of the sufficiency of the evidence to sustain the conyictions. At trial, Gaston argued in his motion for judgments of acquittal that the State failed to present a prima facie case. As part of that argument, Gaston argued that Mushat did not testify to anything that would have established Gaston’s guilt. On appeal, Ga-ston argued that, if Mushat’s testimony is excluded, the State failed to present sufficient evidence to convict him.
The language in Gaston’s brief to the Court of Criminal Appeals was confusing. On the one hand, it could imply that the evidence presented by the State would have been sufficient if Mushat’s testimony had been corroborated. On the other hand, it could mean that Mushat’s testimony was due to be excluded because it did nothing to establish Gaston’s guilt and that, if Mushat’s testimony is excluded, the State failed to present sufficient evidence to convict Gaston. I believe that Gaston meant the latter, especially because (1) this interpretation is consistent with what Gaston' argued at trial and (2) Gaston concluded his argument before the' Court' of Criminal Appeals by arguing that the State presented no evidence (which necessarily would include.Mushat’s testimony) indicating that Gaston committed the offenses in question. I believe, therefore, that the Court of Criminal Appeals incorrectly interpreted Gaston’s argument to be solely about corroboration of accomplice testimony when it was really about the sufficiency of the evidence as a whole.
In his petition for a writ of certiorari, Gaston addressed not only the issue whether his corroboration argument had been preserved for appeal (which, in turn, required asking us to overrule Weeks), but also the issue whether the State presented sufficient evidence to convict him. Gaston argued that the Court of Criminal Appeals confused the question of law, which was whether the State presented sufficient evidence to convict him, with a specific argument, which dealt with whether Mushat’s testimony had been sufficiently corroborated. Gaston also argued that, once Mus-hat’s testimony was subtracted, the State failed to present sufficient evidence to convict him. After this Court granted certio-rari review, Gaston briefed these issues, and the State made no objection that Ga-ston was briefing an irrelevant issue because the sufficiency-of-the-evidence issue was not properly before us. Thus, I be-, lieve the issue of the sufficiency of the evidence was properly before this Court.
However,, even if it was not, the United States Supreme Court has held that “a court may consider an issue ‘antecedent to ... and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief.” United States *527 Nat’l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quoting Arcadia v. Ohio Power Co., 498 U.S. 73, 77, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990)),[3] The present dispute ultimately arose from the question whether the State presented sufficient evidence to convict Gaston. The issue of the sufficiency of the evidence is therefore antecedent to the questions whether Mushat’s testimony was corroborated sufficiently and whether Ga-ston preserved that-argument for appellate review. Moreover, if the State failed,to present sufficient evidence to convict Ga-ston, then Gaston is entitled to a judgment of acquittal, which would dispose of the other issues.
“He that walketh with wise men shall be wise: but a companion of fools shall be destroyed.” Proverbs 13:20 (King James). Gaston may have been a “companion of fools,” but that is all that the State could prove. Merely being a companion of fools is not a punishable crime at law. The jury could not reasonably infer from the fact that Gaston was in the SUV with four other people that he was the one who fired the shots or that he aided or abetted those who did. I therefore believe the prosecution obtained Gaston’s convictions and sentences by proving “guilt by association” instead of by proving guilt beyond a reasonable doubt. Because the State did not meet its burden, I believe the judgment of the Court of Criminal Appeals is due to be reversed and that Gaston-is due to be acquitted. For these reasons, I respectfully dissent.

. I note, however, that the State made excel- ■ lent arguments in response to Gaston’s contentions in his brief to this Court and that Gaston failed to file a reply brief.

. " ‘Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, cri-minating force of his testimony.’ " Andrews v. State, 370 So.2d 320, 322 (Ala.Crim.App.1979) (citing Malachi v. State, 89 Ala. 134, 140-41, 8 So. 104, 106 (1889)). “Evidence of flight or other indications- of consciousness of guilt may be considered as corroborative evidence.” Andrews, 370 So.2d at 322. In this case, Gaston’s apparent lie to the police — that he and Mushat were not in the ¿UV when the shooting occurred — tended tot corroborate Mushat’s testimony that Gaston was in the SUV when the shooting occurred. Because I believe that Mushat’s testimony was sufficiently corroborated, I believe that overruling Weeks and Marks would have made no difference in this case; therefore, it was not necessary to do so.

. See also Planned Parenthood of Kansas & Mid-Missouri v. Moser, 747 F.3d 814, 837 (10th Cir.2014) (following United States Nat'l Bank ) ("Waiver, however, binds only the party, not’the court. A party that waives an issue is not entitled to have us consider and rule on it. But it is well-settled that courts have discretion to raise and decide issues sua sponte, even for the purpose of reversing a lower-court judgment.”); Belize Telecom, Ltd. v. Government of Belize, 528 F.3d 1298, 1303-04 (11th Cir.2008) (applying United States Nat'l Bank); cf. Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala.2004) (" ‘ "Appellate review does not consist of supine submission to erroneous legal concepts.... Our duty to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or by-passivity, can force us to abdicate our appellate responsibility.” ’ ” (quoting Forshey v. Principi, 284 F.3d 1335, 1357 n. 20 (Fed.Cir.2002), quoting in turn Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972))).