UNITED STATES of America, Plaintiff,

v.

William D. GLASCOCK, et
al., Defendants.

Civ. No. 81–HM–175–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

March 26, 1986.
Supplemental Order March 27, 1986.

Lance J. Wolfe, U.S. Dept. Justice, Tax Div., Washington, D.C., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., for plaintiff.

John E. Higginbotham, Robert P. Barclift, Higginbotham & Whitten, Florence, Ala., for defendants.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

The United States of America (United States) brought this civil action against William D. Glascock,[1] Martha A. Boogaerts[2] and others[3] on February 6, 1981 seeking to foreclose federal tax liens

---

[1] An inmate of the federal correctional facility known as Eglin Prison Camp, Eglin Air Force Base, Florida, prior to and at the time of the final bench hearing herein.

[2] At the time of the filing of this lawsuit this defendant bore the name of Martha A. Boogaerts via her third marriage. She will appear in this saga under other surnames via prior marriages but the surname she uses on specific occasions cannot be accepted as being the surname of her then husband.

[3] Other defendants, being judgment creditors of William D. Glascock, were sued herein. However, such other defendants have either been

against the interest of William D. Glascock in certain residential real property situated in the City of Florence, Alabama, or in the alternative, to set aside as fraudulent a certain February 17, 1976 deed of conveyance of improved residential real estate commonly known as 119 South Sequoia Boulevard, Florence, Alabama, made by Hensley Construction Co., Inc. to defendant Martha A. Boogaerts in her former but not then true name of Martha A. Roberts allegedly at the direction of her then husband, William D. Glascock, for the purpose of preventing his creditors from subjecting it to their claims or demands. Under date of April 15, 1981 defendant Martha A. Boogaerts filed answers to the complaint herein, denying in general the material allegations thereof.[4] Judgment by default was entered by the Court on August 26, 1982 against defendant William D. Glascock in this action, adjudging him to be then indebted to the United States of America in total amount of $170,657.89, plus interest and statutory additions as provided by law.

The final bench hearing in the above entitled civil action was held at the Federal Courthouse in Florence, Alabama on November 26 and 27, 1984. In belated conformity with the provisions of Rule 52, Fed.R.Civ.P., the Court here finds the facts specially and states separately its conclusions of law thereon.

## FINDINGS OF FACT

1. At all times herein pertinent defendant William D. Glascock was indebted to plaintiff United States of America in total amount considerably in excess of One Hundred Fifty Thousand ($150,000.00) Dollars for various federal taxes. As of December 2, 1981 a Consent Order and Judgment was entered and rendered in the United States District Court for the Northern District of Florida, Pensacola Division, in Civil No. PCA 81–0419 in favor of plaintiff United States of America and against defendant William D. Glascock in total amount of $243,926.18, as of September 15, 1981, plus interest and statutory additions thereon as provided by law (Government Exhibit No. 6). Government Exhibit No. 5 herein is a true, correct and complete record of the federal tax liabilities of defendant William D. Glascock. The liability referred to herein results from the failure of William D. Glascock to pay certain federal taxes, as set forth in detail in the following tables:

dismissed or the Court has relegated their priority claim to a status inferior to the lien claim of United States.

4. Martha A. Boogaerts position in this litigation was amplified at the October 29, 1982 pre-trial conference herein. ¶ 5(c) of the Pre-Trial Order reads:

"(c) *Defendants' positions.* Martha A. Boogaerts contends that the property involved was purchased by her from Billy Hensley Construction Company. It is her contention that William D. Glascock has never had any right, title, or interest in said property and that both legal and equitable title to said property are vested in her in fee simple absolute. The property in question was purchased out of Martha A. Boogaerts' own personal funds with the exception of the down payment which was supplied by William D. Glascock. For a number of years William D. Glascock supported Martha A. Boogaerts both prior to and during their marriage. It is irrelevant that some of the funds used to purchase the house were provided to her by William D. Glascock. Subsequent to that period, Martha A. Boogaerts has personally provided all the funds which have been used to make payments on the property in question. There was never existing any intent or purpose to delay, hinder, or defraud the creditors of William D. Glascock not [sic] did a fraudulent conveyance ever occur. In the alternative, Martha A. Boogaerts contends that this action by the United States Government is barred by the applicable statute of limitations and the Equitable Doctrine of Laches."

Section 6672 (responsible person) taxes

| Taxable Period | Date of Assessment, Notice and Demand | Amount of Assessment | Unpaid Balance of Assessment |
|---|---|---|---|
| 3rd Quarter 1971 | 02–07–75 | $ 61,464.40 | $ 52,715.70 |
| 4th Quarter 1971 | 02–07–75 | 32,056.49 | 2,718.17 |
| 1st Quarter 1972 | 02–24–74 | 11,991.46 | 11,991.46 |
| 2nd Quarter 1975 thru 1st Quarter 1976 | 08–23–76 | 56,828.53 | 56,828.53 |
| 4th Quarter 1977 thru 1st Quarter 1978 | 03–19–79 | 5,172.24 | 5,172.24 |
| 4th Quarter 1977 thru 2nd Quarter 1978 | 03–19–79 | 12,266.77 | 12,266.77 |
| Total | | ·$179,779.89 | $141,692.87 |

Federal Income Taxes

| Taxable Period | Date of Assessment, Notice and Demand | Amount of Assessment | Unpaid Balance of Assessment |
|---|---|---|---|
| 1976 | 06–12–78 | $ 13,586.55 | $ 13,586.55 |
| 1977 | 12–24–79 | 440.71 | 440.71 |
| 1978 | 12–17–79 | 14,937.76 | 14,937.76 |
| Total | | $ 28,965.02 | $ 28,965.02 |

In addition to the tax liabilities indicated above, William D. Glascock was indicted on June 7, 1978, under Section 7201 of the Internal Revenue Code, for tax evasion, for form 1040 income taxes for the years 1971, 1972, and 1973 in the amounts of $42,877.84, $62,384.07, and $28,478.81, respectively. He pled guilty to Count 2 of the indictment, concerning taxes due for the year 1972 on March 29, 1979 with the other counts of the indictment being dismissed.

2. Plaintiff United States of America to the knowledge of defendant William D. Glascock was a substantial creditor of defendant Glascock for back federal taxes past due and owing at all times pertinent in this litigation, including the respective dates hereinafter set out on which transactions occurred between Hensley Construction Co., Inc., defendant William D. Glascock and defendant Martha A. Boogaerts (then known by or using the name of Martha A. Roberts) involving the improved residential real estate commonly known and described as 119 South Sequoia Boulevard, Florence, Alabama and legally described as Lot 151 in The Cedars, a subdivision in the City of Florence, Lauderdale County, Alabama, according to plat thereof recorded in Plat Book 4 at pages 50–51 in the Office of the Judge of Probate of Lauderdale County, Alabama.

3. Defendant Martha Boogaerts (then married to one Jim Roberts, known as Martha Roberts and living with her husband and daughter at Haleyville, Alabama) went to work for defendant William Glascock at his mobile home factory in Haleyville, Alabama in late 1970 or early 1971. He was at that time married to Rebecca Glascock and

resided with her and their three children in Haleyville. A short while later Martha Roberts (Boogaerts) and William Glascock commenced their affaire which was soon discovered by their spouses. The aftermath for Martha Roberts was estrangement and separation from her husband which culminated in a June 1971 divorce and the gift of a 1972 model gold Corvette purchased for her by Glascock. Her trail thereafter meanders from Haleyville to Phil Campbell and on south to Jasper, all in Alabama, with evidence that her romantic interludes with Glascock continued unabated and well financed to the wound of wife Rebecca whose oft voiced hurt and displeasure to her errant husband fell on ears deafened by heartthrobs for his new love. In late 1981 Martha Roberts, becoming dissatisfied with daytime inactivity, moved from Jasper to Decatur, Alabama, the home of her grandmother, where she became employed at Parisian's Department Store. There she sought to enjoy the best of both worlds, seeing her first husband occasionally and intermittently, Glascock. In her words: "Bill [Glascock] left me alone for a period of time—just long enough." Spring 1972 emerges in all its glory with Martha Roberts ensconced at luxurious Fontainbleu Apartments on Darby Drive in Florence, Alabama, the rental being courtesy of Glascock, plus incidentals. Their affaire at this juncture had ripened into plans for marriage but not bigamy on Glascock's part. He then maintained a lake residence on Wilson Lake in Colbert County, across the river from Florence, but continued the fiction of having his principal residence in Haleyville, the hometown of wife, Rebecca. Deepdown, Glascock reasoned that if you're trying to build a home and trying to build a [new] life "it all starts with a home, not just a house, but a home." (Glascock Deposition, p. 10, lines 1–4, incl.). Moreover, mused Glascock, "they wouldn't permit her to

have the poodle over there [Fontainbleu]." *Id.* p. 9, lines 13–14. Aside from his described yearning for a home, not just a house, and his desire to please his love by housing her pet poodle and her under one roof, Glascock's innate business sensibilities rebelled at the idea of throwing money away every month on an apartment. Next follows the episode of the South Sequoia Boulevard house purchase, vis-a-vis real estate contract of sale and purchase between Hensley Construction Co., Inc. and Martha A. Roberts, dated June 22, 1972, Lease and Sale Agreement between Hensley Construction Co., Inc. and Martha A. Roberts bearing date of August 7, 1972 and finally Deed of Conveyance dated as of February 17, 1976 from Hensley Construction Co., Inc. to Martha A. Roberts,[5] all of which are here attacked by the government as a series of fraudulent transactions, designed by Glascock to shield his new lair for his new love from the lawful claims and demands of his creditors, particularly the United States.

4. This evidentiary record presents the two post-event recollected versions of the defendants Martha A. Boogaerts and William D. Glascock concerning their summer 1972 acquisition and possession of the 119 South Sequoia Boulevard residential real estate. Boogaerts testified in person at the final bench hearing while Glascock's testimony was presented by the government through his November 9, 1984 deposition taken at Eglin Federal Prison Camp.

By Boogaerts' admission she was unemployed in June 1972 with Glascock paying for her full keep in a rather comfortable fashion. "He gave me a substantial amount of money to pay expenses, clothes, car maintenance, etc." She had her own bank account at First National Bank of Florence as soon as she moved to Florence. Glascock gave her money on a weekly basis for household expenses, including apartment rental, utility and doctor bills, car

---

**5.** Who by this date bore the legal name of Martha A. Glascock by virtue of Rebecca divorcing William D. Glascock in April 1974 and Martha's marriage to Glascock in Rome, Georgia on May 16, 1974. This act of defendant Boogaerts in taking title to the residential real estate in question in her former name, Martha A. Roberts, deserves and receives the later attention of the Court in its Findings of Fact, infra.

payments (Corvette), and her local charge accounts. She planned to marry him. He told her in early 1972 that he was divorced but she learned in the fall of 1972 that he wasn't. He convinced her to give him more time. For starters the couple planned to buy a beach condo but she changed her mind on that. Bill [Glascock] then announced: "I'll just get you a house here ... pick out what you want." A Mr. Goodwin of Hensley Construction Co. of Florence showed them two houses available. She saw the Sequoia Boulevard house, exclaimed: "I love it," and Glascock answered: "It's yours." Boogaerts candidly admits that the sale-purchase transaction was negotiated solely between Glascock and the Hensley people but adds that Glascock was not present when she met with Messrs. Goodwin and Hensley on June 22, 1972 and signed the Real Estate Contract (Government Exhibit 1) under the terms of which Martha A. Roberts agreed to purchase and Hensley Construction Co., Inc. agreed to sell Lot 151, Cedars Subdivision, commonly known as 119 South Sequoia Boulevard, for an agreed purchase price of $39,500.00, payable as follows: $3,950.00 earnest money (receipt acknowledged); cash on closing sale ... $27,000: (1) purchaser to pay $8,550.00 to Hensley Construction Co., Inc. at loan closing; (2) purchaser to assume loan with First Federal Savings & Loan Association in the amount of $27,000.00— payable at approximately $199.53 per month for a period of 25 years, plus taxes and insurance on said property; (3) seller to pay all closing cost. Martha Boogaerts acknowledges that Glascock made the $3,950.00 earnest money payment (Defendant's Exhibit 1, First State Bank, Phil Campbell, Alabama, check dated June 25, 1972). Why in her name? Capsule summary by Boogaerts: "I was single at the time and he wanted to make a gift to me." In July 1972 Martha Boogaerts moved into the South Sequoia Boulevard dwelling. Glascock continued to keep and maintain his lake residence but frequently spent his nights with Martha Roberts [Boogaerts] in Florence. He lived there with her.

Before moving into the second stage of the South Sequoia Boulevard property acquisition, i.e., the Lease and Sale Agreement dated August 7, 1972 between Hensley Construction Co., Inc. and Martha A. Roberts, it is only fair to here recount the recollections of William D. Glascock concerning the real estate purchase in question as narrated by Glascock in his Eglin Prison Camp deposition of November 9, 1984. When initially asked to explain his connection with the house located at 119 South Sequoia Boulevard in Florence, Alabama he testified: "I bought the house in [1973] and lived in it." Deposition, p. 4, lines 24–25. He stated he bought the house from Billy Hensley, Hensley Construction Company at a cost of thirty-six or thirty-seven thousand dollars. Deposition, p. 6, lines 12–15, incl. At this point the deposition reads:

Q. Did you sign the contract?

A. No, sir. I didn't sign it.

Q. Who signed the contract?

A. Martha signed the contract.

Q. Why did Martha sign the contract?

A. Well, it would have been hard for me to explain, me being married and me buying a house up there, number one. *Number two is I had a lot of financial problems at that time. I owed the government a lot of money and had a lot of liens on me.* (emphasis supplied.) I couldn't own anything. I haven't owned anything in a long time, can't.

[Deposition, p. 6, lines 16–25; p. 7, lines 1–2]

The testimony of Glascock continues on p. 7 at line 9: "I had a lot of problems at that time, a lot of financial problems. Martha knows that. Well, hell, the whole world knows that." Also on p. 7 beginning at line 16: "I had Martha sign the contract for the simple damn reason I couldn't put it in my name on account of creditors, creditors and I was married and I always felt like, you know, and its no secret, I didn't want to lose the house. I mean, hell, no sense in buying a house and then turning around and losing it." Glascock later am-

plified the reasons for his strategy: "There was no sense in me buying a house and putting it in my name when I—when I had judgments against me, liens against me from IRS. I was spending more time with you folks [IRS], with them than I was running my business. Also, I had guaranteed a bunch of—claims and debts on mobile home plants, personal obligations, and those plants had bellied up. That's exactly what I meant" (Deposition p. 42, lines 15–22, incl.). Glascock further testified that he did the negotiations for the house with Mr. Hensley through Willie Goodwin. Goodwin was involved and so was Billy Hensley. Deposition, pp. 10–11. When asked if there were mortgage payments to be made on the house, Glascock replied affirmatively and stated: "Well, it was two type payments.—There was the payments against the down payment which I, which I gave them a stack of signed checks, made them out. There was also the monthly payment that had to be made out which, which I gave to Martha, or Martha was on, or she was on the payroll of one of the companies or I gave her a check or something. I'm not really sure how it worked. She got the paycheck every week and that was enough to run the household and that was a part of the household expense." Deposition p. 11, lines 14–25. When asked did Martha Roberts work for the paycheck, Glascock replied: "When she married me she ceased working. I've never had a wife to work. I should have but didn't." Deposition p. 12, lines 2–3.

Under date of August 7, 1972 Hensley Construction Co., Inc., first party, and Martha A. Roberts, second party, entered into written Lease and Sale Agreement (Government Exhibit No. 2) having as its subject Lot 151 in the Cedars (119 South Sequoia Boulevard property) and providing for the rental and lease of such property from Hensley Construction Co., Inc. to Martha A. Roberts for a term of 300 months, commencing on August 1, 1972; that the amount of rent for said term was $3,950.00 cash in hand paid by second party to first party (receipt acknowledged); the sum of $8,550.00 payable as follows:

$4,275.00 plus interest on the unpaid principal at the rate of 6% per annum on or before six months from date and the sum of $4,275.00 plus interest on the unpaid principal due and payable on or before twelve months from date; and the sum of $192.60 per month, the first such monthly payment due and payable on or before the first day of August 1972 and a like payment on or before the first day of each month thereafter during said term. Such contract further provided that if, at the conclusion of the rental period therein provided Martha A. Boogaerts had complied with all the terms and covenants of the agreement—Hensley Construction Co., Inc. would deliver to Martha A. Roberts a good and sufficient deed conveying the demised premises to Martha A. Roberts, free from all encumbrances except taxes for the year in which the deed was delivered (Government Exhibit 2).

The undisputed evidence in this case is that defendant William D. Glascock thereafter supplied the money to make the requisite $4,275.00 plus interest payment to Hensley Construction Co., Inc. which was due on or before 6 months from and after August 7, 1972 (date of Lease-Sale Contract) and further thereafter supplied the funds to make the requisite $4,275.00 plus interest additional payment to Hensley Construction Co., Inc. which was due and payable on or before 12 months from and after such August 7, 1972 date. The evidence is further undisputed that defendant Glascock also periodically supplied the funds necessary to make the $192.60 monthly payments as provided in such lease-sale agreement. Such monthly payments to Hensley Construction Co., Inc. were made by defendant Martha A. Roberts by her personal checks drawn against bank funds provided her each month by William D. Glascock.

5. While the $8,550.00 sum prescribed in the Lease-Sale Contract of August 7, 1972 was paid by William A. Glascock to Hensley Construction Co., Inc. within the 12-month period from and following August 7, 1972, together with the $192.60

monthly payments therein provided, for reasons unexplained by the evidentiary record a deed of conveyance from Hensley Construction Co., Inc. to Martha A. Roberts respecting the 119 South Sequoia Boulevard property was not executed and delivered until February 17, 1976 (Government Exhibit 3). During this period Martha A. Roberts continued to make the $192.60 monthly payments to Hensley Construction Co., Inc. with monies regularly supplied to her by William A. Glascock for that purpose. Under the terms and provisions of such conveyance the designated grantee Martha A. Roberts assumed and agreed to pay that certain first mortgage on such property executed by Hensley Construction Co., Inc. to First Federal Savings and Loan Association of Florence (First Federal) dated July 7, 1972 and recorded in Book 1043, pages 57–59 in the Lauderdale County Probate Office securing the original principal sum of $27,000.00. Immediately prior to such closing defendant Boogaerts presented herself to officials of First Federal identifying herself as Martha A. Roberts (in the presence of David McCall of First Federal and Billy Hensley) *and signed an Application For Transfer of Loan as Martha A. Roberts, a single woman* (Court Exhibit No. 1). This fact is considered by the Court as a most significant fact strongly supportive of the government's claim that the February 17, 1976 deed of conveyance was a fraudulent conveyance made at the direction of defendant William D. Glascock with the knowing connivance of defendant Martha A. Boogaerts for the purpose of preventing Glascock's creditors, including the United States, from subjecting such property to their lawful claims or demands. *Martha A. Roberts and William D. Glascock were at that time husband and wife, having been married on May 16, 1974 in Rome, Georgia and having thereafter lived together as man and wife continually to the time of the execution and delivery of such February 17, 1976 conveyance in which the designated grantee therein, Martha A. Roberts, assumed and agreed to pay the First Federal mortgage*

*loan on the real property which was the subject thereof* (emphasis supplied).

■ 6. The Court further finds from the evidence that despite her marriage to defendant William D. Glascock on May 16, 1974 and her continued cohabitation with him at 119 South Sequoia Boulevard, Florence, Alabama thereafter as his lawful wife the defendant Boogaerts (then legally known as Martha A. Glascock) never used the name *Glascock* in the State of Alabama in her business dealings with any third party entity. Her bank account in Florence after marriage to Glascock was continued in her former name of Martha A. Roberts. All of her direct charge accounts and credit cards were in the name of Martha A. Roberts. Her ad valorem tax assessments and insurance policy on the South Sequoia Boulevard property were continually made and maintained in the name of Martha A. Roberts. The real estate mortgage with First Federal on the South Sequoia Boulevard real estate even down to the time of the final bench hearing was in her former name of Martha A. Roberts. When confronted with these damning facts at final bench hearing, defendant Boogaerts could give no rational or logical explanation for such aberrant behavior. The Court notes that this situation is a far cry from that of a married professional woman who prefers to use a professional name other than her husband's. There is only one logical explanation for such behavior. On the basis of this evidentiary record the Court finds as a fact that defendant Martha A. Boogaerts was fully and continually aware of defendant William D. Glascock's substantial federal tax liabilities to the United States of America both prior to, at the time of and subsequent to the initial real estate transaction of June 22, 1972 with Hensley Construction Co., Inc. respecting the South Sequoia Boulevard residential real estate and was an active and knowing participant with William D. Glascock in his deliberate planned and continuing scheme to defraud the United States of America by purchasing and acquiring possession and ownership of such South Sequoia Boulevard real estate in the name of Martha A. Roberts

both before and after their marriage on May 16, 1976 and specially including the August 7, 1972 Lease Sale Agreement (Government Exhibit No. 2) and the February 17, 1976 deed of conveyance (Government Exhibit No. 3).

7. As of February 17, 1976 (date of Martha Roberts' assumption) the unpaid principal balance of the First Federal mortgage on the South Sequoia Boulevard property was $25,556.76. At all times pertinent hereto, the total monthly mortgage payment to First Federal was $231.81, including monthly escrow payment for insurance and ad valorem taxes. Hensley Construction Co., Inc. made such monthly mortgage payments to First Federal until Martha A. Roberts (then Martha A. Glascock) assumed and agreed to pay such mortgage indebtedness on February 17, 1976. However, Glascock supplied the funds to Hensley Construction Co., Inc. used by it to make such monthly payments by causing to be paid through Martha to Hensley the $192.60 monthly payments prescribed by the Lease-Sale Contract. Thereafter, as long as defendants Glascock and his wife, Martha, lived in such dwelling, such monthly mortgage payments were made by Martha A. Glascock in her former name of Martha A. Roberts with funds periodically provided by William D. Glascock. The mortgage in question contains a Due on Sale provision which was not invoked by such mortgagee at the time of the February 17, 1976 conveyance of the mortgaged property to William D. Glascock's wife, Martha.

8. In September 1976 William D. Glascock and wife, Martha (defendant Boogaerts), moved to Louisiana. The South Sequoia Boulevard property at that time was placed with Nadine Darby then of Darby Real Estate in Florence for rental under agreement that the real estate agent would handle all rentals, collect the rent, pay the monthly mortgage payment to First Federal from the rental fund and periodically disburse any remaining funds to Martha A. Glascock who followed her usual practice when consummating business transactions with third party entities of using her former name, Martha A. Roberts. Mrs. Darby testified at the bench hearing. At that time she was employed by Longshore-Pounders Realty of Florence. She testified that she was still handling the rental of the South Sequoia Boulevard property for defendant Martha A. Boogaerts and had continually received a 10% commission for her services under such rental arrangement. She explained her rental operations procedure. The property was originally rented for $325.00 per month but as of October 1980 such monthly rental had increased to $375.00. The owner provided all repairs and maintenance. When a tenant reported some needed repair, she authorized the repair after first consulting with Ms. Boogaerts who paid the repair bill directly. She disbursed the remaining rental funds to the owner each month after making the First Federal mortgage payment and deducting her commission from the rental payment. At the time of her testimony the property was rented for $375.00 per month and the monthly mortgage payment was $232.81. Her monthly remittance to defendant Boogaerts amounted to approximately $107.19. The evidence is undisputed that from September 1976 until the time of the final bench hearing herein in November 1984 Nadine Darby did not know her client was ever married to William D. Glascock.

9. On December 21, 1976, after moving to Shreveport, Louisiana, defendants Glascock and wife, Martha, entered into a Marriage Contract for the purpose of formally renouncing those provisions of the Civil Code which establish a community of acquets and gains between husband and wife (Government Exhibit 4). §§ III and IV read:

### III.

The affiants hereto shall be separate in property. Accordingly, they hereby formally renounce those provisions of the Civil Code which establish a community of acquets and gains between husband and wife.

## IV.

All property and effects of said husband and wife, whether owned by MARTHA ADAY GLASCOCK or WILLIAM DEWAYNE GLASCOCK at the time they settled in Louisiana, or which have been acquired since that time, or which hereafter may be acquired, are hereby declared to be separate property, and that of the wife, separate and paraphernal property, and they and each of them do hereby espressly reserve to themselves individually the entire administration of their respective particular movable and immovable property, and the respective free enjoyment of each of their revenues.

Defendant Boogaerts testified at the bench hearing that the Marriage Contract was her idea born from knowledge of her husband. "I had lived with Bill long enough that I was going to protect what was mine." She was worried over Glascock "taking it away from me." She knew he was in debt at the time they moved to Louisiana but denied knowing of his trouble with the federal government for taxes at the time the South Sequoia property was originally purchased. She learned of that after she married him when she came home one day to find two agents in the house talking to her husband. The evidence is unclear whether Ms. Boogaerts was testifying that her knowledge of the tax troubles was prior or subsequent to the February 17, 1976 deed of conveyance from Hensley Construction Co., Inc. However, she later testified that her knowledge of Glascock's federal tax problems was acquired subsequent to the February 19, 1976 deed of conveyance. The Court finds this testimony to be unworthy of credence, considering the massive array of facts pointing to the contrary.

10. Defendants Glascock and Boogaerts (actually Martha A. Glascock at that time) physically separated in Louisiana in June of 1978 and were divorced in September of that year. At that time they were fighting like cats and dogs. Glascock and his wife, Martha, then knew he was going to jail (Glascock Deposition p. 25, line 8; lines 11–12). The evidentiary record is barren respecting a property settlement except it is known and undisputed that Martha Glascock continued to own the South Sequoia Boulevard real estate in Florence which was paying for itself through rental with the record owner receiving the net rental amount each month from her Florence real estate agent.

11. According to her own testimony, Martha Glascock was still married to William Glascock when in Louisiana she became involved with Mr. Boogaerts. Glascock testified that she was living with someone else when she asked him to leave their Louisiana home. He got the divorce in September 1978 and thereafter married Janice Boogaerts, the former wife of Martha A. Boogaerts' present husband.

12. The Court has not lightly treated the evidence in this case regarding Glascock's alleged 1978 threats and blusterings that he would take the South Sequoia Boulevard house in Florence away from Martha if she left him or if she didn't come back to him, whichever version one chooses to believe, if either. This category of evidence came from Martha Boogaerts' own testimony at the bench hearing, from the testimony of Sybil Masterson Lamar (Martha's closest friend) and from the testimony of Judith Aday, mother of Martha Boogaerts. Examples of this category of evidence, offered on the theory that Glascock was lying mad at his former wife, Martha, at the time of his November 9, 1984 deposition, are as follows:

1. *Martha Boogaerts: Place:* Louisiana. *Setting:* Glascock home. *Subject:* Separation. *Bill Glascock to Martha:* "I'll see that you'll lose your home if you don't come back to me. I'll marry Janice and move back to Alabama."

2. *Sybil Masterson Lamar: Place:* Louisiana. *Setting:* Glascock home. *Reason for her presence:* Visit from Alabama. *Time:* Right before divorce became final. *Also present:* Janice Aday. "Bill was bitter over losing

Martha; he asked what he could do to get her back. He said he was going to destroy Martha, was going to take her house."

3. *Janice Aday: Place:* Aday home in Alabama. *Setting:* Birthday party for Gloria Aday. *Time:* June 1978. *Location:* Out in yard. "Bill told my husband Martha was fixing to leave him. He said angrily: "She's going to find out how sharks operate."

*Second conversation,* August 1978: *Place:* Aday home. Bill Glascock: "I'm going to marry Janice and move her into the house [at Florence].

Glascock admitted on cross-examination during the taking of his November 9, 1984 deposition at Eglin Federal Prison Camp that he probably made several similar statements about Martha and the South Sequoia Boulevard house in Florence as attributed to him by the foregoing described testimony but flatly denied there was any condition of Martha coming back to him in any remark he made. In substance he stated: "It sounds like something I would say." (Deposition p. 36, line 19).

The Court attaches little weight to this described testimony for a number of reasons. First of all, this testimony from the defendant herself and from her best friend and mother is highly suspect. Each such witness had a decided interest in the outcome of the case. Secondly, this line of evidence offered to contradict Glascock's own testimony that the acquisition of the Florence, Alabama residential real estate in the name of his girl friend (later his wife) was a planned and deliberate scheme on his part to shield such property from the demands and claims of his creditors is simply overwhelmed by the other facts appearing in this evidentiary record which move one to the inevitable finding and conclusion that Glascock indeed intended to defraud his creditors by such maneuvers and that Martha A. Boogaerts, or Martha A. Roberts, or Martha A. Glascock, by whatever name she chose to use from time to time,

was a knowing and willing accomplice to her lover and later husband in such fraudulent efforts. Finally, this particular line of testimony is not believable because of the lapse of time from the period in 1978 in which these exclamations of Glascock were allegedly voiced until that period in November 1984 in which the final bench hearing was held. There is not one shred of evidence in this record pointing directly or indirectly to any effort on Glascock's part to carry out his alleged threats. This Court therefore rejects this effort of defendant Boogaerts to clothe herself in a cloak of innocence woven by Glascock's ire.

13. The evidentiary record in this action shows that as of the time of the final bench hearing in this cause defendant William D. Glascock was a convicted felon several times over. Indeed, he was incarcerated in a federal prison facility at the time of the hearing.[6]

On March 29, 1979 in the United States District for the Northern District of Alabama in CR 78–M–0220–S William D. Glascock on plea of guilty to Count 2 of the indictment therein was adjudged guilty by the Court of wilfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the calendar year 1972 by filing a false and fraudulent income tax return in violation of Section 7201, Internal Revenue Code, 26 U.S.C. § 7201 and was committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a term of five (5) years (Defendants' Exhibit No. G).

Also on March 29, 1979 in this Court in CR 79–M–0079–S William D. Glascock on plea of guilty to Count 1 of the indictment therein was adjudged guilty of knowingly making false statements to a bank for the purpose of influencing the action of said bank on his application for a loan, the deposits of said bank having been insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 1014, and imposi-

---

**6.** The Court notes that Glascock is still confined in a federal correctional facility at Maxwell Field, Montgomery, Alabama. This is an observation, not a finding of fact.

tion of sentence was suspended and defendant placed on probation for a period of five (5) years, subject to the general terms and conditions of probation of record in this Court and subject to the special condition that defendant was to pay all income taxes, penalties, interest and costs finally determined to be due and owing for the tax years alleged in the indictment in CR 78-M-0220-S, Northern District of Alabama, said probation to begin when due and lawful release from custody (Defendants' Exhibit No. B).

Also on March 29, 1979 in this Court in CR 79-M-0050-S William D. Glascock on plea of guilty to Count 1 of the indictment therein was adjudged by the Court of wilfully and unlawfully making false statements to a state bank and trust company, the deposits of which were then insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of said bank in violation of Title 18, United States Code, Section 1014, and was thereupon committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a period of two (2) years, said sentence to run concurrently with the sentence imposed in CR 78-M-0220-S, Northern District of Alabama (Defendants' Exhibit No. C).

Also on March 29, 1979 in this Court in CR 79-M-0049-S William D. Glascock on plea of guilty to Count 4 of the indictment therein was adjudged guilty by the Court of knowingly making false statements in statement of condition for the purpose of influencing the action of a bank in approving loans to him, said bank having been insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 1014, and was thereupon committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a period of two (2) years, said sentence to run concurrently with the sentence imposed in CR 78-0220-S, Northern District of Alabama (Defendants' Exhibit No. E).

On December 12, 1983 in the United States District Court for the Middle District of Louisiana William D. Glascock on plea of guilty to Counts 1 and 2 of the indictment therein was adjudged guilty of conspiring to violate 18 U.S.C. §§ 472, 473 and 2, and 18 U.S.C. §§ 472 and 2—possession of forged and counterfeited obligations of the United States, and was thereupon committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a period of five (5) years on Count 1 with impositions of sentence, as to imprisonment only, suspended and defendant placed on probation for a period of five (5) years on Count 2 to commence upon defendant's release from custody. As a special condition of probation the Court directed that defendant was to pay a fine in the sum of $5,000.00 as directed by the Probation Department (Defendants' Exhibit No. A).

In addition to the foregoing described felony convictions, defendant William D. Glascock on October 13, 1975 entered plea of guilty to An Attempt To Commit the Offense of False Pretenses, a misdemeanor, in the Circuit Court of Lauderdale County, Alabama, was adjudged guilty of such offense by such state court, and fined $500.00 and court costs (Defendants' Exhibit No. F).

14. In weighing the deposition testimony of William D. Glascock in this case and judging his credibility or believability, the Court has carefully considered Glascock's previous felony convictions, his previous state court conviction of crime involving dishonesty, all other credible evidence in this record which supports or contradicts his testimony, and his interest in the outcome of the case. The Court has found and determined and now finds and determines that Glascock's testimony herein is credible and worthy of belief.

15. As of the time of the final bench hearing the fair cash market value of the 119 South Sequoia Boulevard residential property in the City of Florence, Alabama was $68,000.00 to $78,000.00. (Testimony

of David McFall, Vice President, First Federal Savings and Loan Association of Florence, whom the Court recognizes and accepts as an expert real estate appraiser in the Florence, Alabama community.) And as of such date, the unpaid principal balance of the first mortgage indebtedness thereon owed to First Federal Savings and Loan Association of Florence, mortgagee, was $19,391.75 with maturity date of July 1977.

16. At the time of her execution of the Real Estate Contract dated June 22, 1972 (Government Exhibit 1), at the time of her execution of the Lease-Sale Contract dated August 7, 1972 (Government Exhibit No. 2), at the time of the execution and delivery to her of the Deed of Conveyance dated February 17, 1976 (Government Exhibit No. 3) (in which she assumed and agreed to pay the unpaid balance of the First Federal mortgage on such property), at all times intervening between such transactions, defendant Martha A. Boogaerts (known at such times by different names) had no assets of consequence, no earned income, no source of funds other than from William D. Glascock, and was completely unable from a financial standpoint to personally meet the financial obligations imposed upon her by the terms and provisions of such documents. Further, during the period from February 17, 1976 until the time she and William D. Glascock moved to the State of Louisiana, defendant Boogaerts (then Martha A. Glascock but using the name of Martha A. Roberts in her business dealings with all third party entities) was wholly financially dependent upon her husband, William D. Glascock, and had no assets or funds or source of funds in her own right to enable her to make the requisite monthly mortgage payments required by the South Sequoia Boulevard property mortgage to First Federal. Finally, defendant Boogaerts, according to this evidentiary record, has expended no funds whatever from her separate estate on the South Sequoia Boulevard real estate.

17. Based on this evidentiary record, the Court finds as a fact that defendant William D. Glascock was insolvent at the time of the execution of the June 22, 1972 Real Estate Contract (Government Exhibit No. 1), at the time of the execution of the August 7, 1972 Lease-Sale Contract (Government Exhibit No. 2), at the time of the execution and delivery of the February 17, 1976 deed of conveyance (Government Exhibit No. 3), at all times intervening between such transactions, and at all times from February 17, 1976 until defendants Glascock and Boogaerts (then Martha A. Glascock) moved to the State of Louisiana.

18. The Court finds as a fact from this evidentiary record that the payment by William D. Glascock of the $3,950.00 earnest money payment required by the Real Estate Contract dated June 22, 1972 (Government Exhibit No. 1), his subsequent payment of the $2,550, plus interest, payment required by the Lease-Sale Contract dated August 7, 1972 (Government Exhibit 2), his payments of the $192.60 monthly payments to Hensley Construction Co., Inc. during the period from August 7, 1972 to February 17, 1976 as required by such Lease-Sale Contract, and his monthly mortgage payments of approximately $232.81 to First Federal (through Martha A. Glascock in the name of Martha A. Roberts) from February 17, 1976 until September 1976 (date of move to Louisiana) as required by the terms and provisions of the First Federal mortgage on the South Sequoia Boulevard property substantially reduced William D. Glascock's financial worth and had the effect of defeating or hindering his creditors, including the United States.

19. Defendant Martha A. Boogaerts currently stands as the sole record owner of the Florence, Alabama residential real estate in question. Her title and ownership, however, is subject to the first mortgage on such property held and owned by First Federal Savings and Loan Association of Florence.

20. From the facts shown in this evidentiary record there is no question but that plaintiff United States of America was an existing and most substantial creditor of defendant William D. Glascock at the time

of execution of the Real Estate Contract dated June 22, 1972 by Hensley Contracting Co., Inc. and defendant Martha A. Boogaerts (then Martha A. Roberts), at the time of the subsequent delivery of possession of the South Sequoia Boulevard real estate by Hensley Construction Co., Inc. to defendants Glascock and Boogaerts (Roberts), at all times subsequent thereto until the time of execution of the Lease-Sale Contract dated August 7, 1972 by Hensley Construction Co., Inc. and defendant Martha A. Boogaerts (then Martha A. Roberts), at all times subsequent to August 7, 1972 until the execution and delivery of the February 17, 1976 deed of conveyance of such property by Hensley Construction Co., Inc. to defendant Martha A. Boogaerts (but in the name of Martha A. Roberts) and at all times during the period of February 17, 1976 until September 1976 (move to Louisiana), and that there was at the time of each such described real estate transaction during each intervening period between such transactions, and during the period of February 17, 1976 until September 1976, a conveyance of property out of which the plaintiff United States of America could have satisfied its claims against defendant William D. Glascock or some portion thereof.

## CONCLUSIONS OF LAW

1. Subject matter jurisdiction exists under 28 U.S.C. §§ 1340 and 1345.[7] Personal jurisdiction and venue are not contested.

2. This is a fraudulent conveyance suit brought by the United States of America ("United States") which has as its ultimate object the collection of federal taxes which are and have been long owed and past due by and from defendant William D. Glascock ("debtor"). The suit seeks to set aside as

fraudulent to the United States in its capacity as a then creditor of debtor Glascock a February 1976 deed of conveyance of Alabama real estate from a third party to debtor's then spouse sued here in her present name of Martha A. Boogaerts. The United States asserts that the consideration for such conveyance was furnished by debtor and that the conveyance to the debtor's wife was made at debtor's instance and direction and with his spouse's knowledge and connivance for the purpose of preventing his creditors from subjecting such property to their claims or demands. The defendant spouse, divorced from Glascock since 1978, asserts in defense of the suit denial of any fraudulent connivance on her part with her then husband and further answers that the conveyance constituted a bona fide gift to her by her then husband motivated by his love and affection for her as his wife, as well as his appreciation for her devotion to him proven under rather strained circumstances prior to their May 1974 marriage. An odd twist in this scenario is that a part of the recited consideration for the conveyance under consideration was the grantee wife's assumption and agreement to pay the then unpaid balance of a first mortgage originally imposed on the property by her grantor.[8] While this fact is undoubtedly relevant on the consideration issue hereinafter discussed, this factual aspect of consideration was not mentioned or discussed in the final bench hearing nor has it been raised or argued in the post-hearing briefs submitted by counsel for the parties.

3. The United States became a creditor of defendant William D. Glascock at the time Glascock failed to pay withholding taxes of his employees in 1971, 1972

---

7. 28 U.S.C. § 1340 provides in pertinent part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, ..."

28 U.S.C. § 1345 provides: "Except as otherwise provided by Act of Congress, all district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer there-

of expressly authorized to sue by Act of Congress.

8. The Court has found from the evidentiary record that the unpaid balance of such mortgage at the time of the execution and delivery of the deed (and thus at the time of assumption) was $25,556.76 (Finding of Fact # 7, ante).

and 1975 pursuant to 26 U.S.C. § 6672[9] and again on the respective April 15th federal income tax due dates succeeding the calendar years 1971, 1972 and 1973 when he failed to pay his lawful federal income taxes due for such calendar year periods. Regardless of when federal taxes are actually assessed, taxes are considered due and owing, and constitute a liability, as of the date the tax return for the particular period is required to be filed. *United States v. Hickox*, 356 F.2d 969 (5th Cir.1966);[10] *United States v. Ressler*, 433 F.Supp. 459 (S.D.Fla.1977), *aff'd* 576 F.2d 650 (5th Cir. 1978). Thus, the United States was clearly a creditor of William D. Glascock at the time of all of the transactions respecting the purchase of the South Sequoia Boulevard residential real estate, at all times intervening between such transactions and at all times subsequent to the date of February 17, 1976 on which the deed of conveyance in question was executed and delivered by Hensley Construction Co., Inc. to Glascock's wife but in the name of Martha A. Roberts.

4. The United States properly sought relief in the above entitled civil action under the applicable fraudulent conveyance laws of the particular state in which the real property and taxpayer were located—in this case, the law of Alabama. *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958);[11] *United States v. Kaplan*, 277 F.2d 405 (5th Cir. 1960); *United States v. Ressler*, 433 F.Supp. 459 (S.D.Fla.1977), *aff'd* 576 F.2d 650 (5th Cir. 1978); *United States v. Grice*, 567 F.Supp. 113, 115, n. 2 (M.D.Ala.1983).

5. Under Alabama law "all conveyances ... of any estate or interest in real or personal property and every charge upon the same made with intent to hinder, delay or defraud creditors ... of their lawful actions, damages, forfeitures, debts or demands ... are void." Ala. Code, § 8–9–6 (1975), formerly codified as Code 1940, Title 20 § 7. This statute is declaratory of the common law and of generally recognized equitable principles. *Fleming v. Kirkland*, 226 Ala. 222, 146 So. 384 (1933). Section 8–9–6 (Ala. Code 1975) does not require the debt, claim or demand, which is protected by statute, to be reduced to judgment before the [action] to set aside a conveyance as fraudulent is filed. The action at law to reduce to judgment and the [action] to set aside are concurrent remedies in point of time, though the latter is, in fact, merely in aid of [the former]; that is, to give the plaintiff the fruits of his judgment when recovered. *Roddam v. Martin*, 285 Ala. 619, 622, 235 So.2d 654 (1970).

In construing the predecessor statute to § 8–9–6 (Ala. Code 1975), identical in wording to the present statute, the Supreme Court of Alabama stated in *Roddam v. Martin, supra*, 285 Ala. at p. 623, 235 So.2d 654:

> The concurrence of three elements is essential before a conveyance can be declared fraudulent under Title 20 § 7, quoted supra. It must be shown that there is: (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. *Adkins v. Bynum*, 109 Ala. 281, 19 So. 400.

If this were the classical fraudulent conveyance fact pattern, the debtor husband would be the grantor in the challenged conveyance, the grantor's wife the named grantee therein and *Roddam v. Martin* the easy authoritative answer to finding the

---

**9.** Section 6672 makes a responsible officer liable for the unpaid taxes withheld by a corporation for its employees. Section 3402 and accompanying regulations prescribe the method for calculating withholding taxes. The regulations issued pursuant to Section 6302(a) provide the rules for payment. Generally, those taxes are due within 30 days of the quarter the monies are withheld for.

**10.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11 Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**11.** The Government's substantive rights in this case are precisely those which other creditors would have under Alabama law.

conveyance to be fraudulent, assuming the presence and proof of the other *Roddam* factors. *The discussion would then shift to an analysis of the evidentiary record to determine the presence of the other proof required before a conveyance found to be fraudulent is due to be set aside.* But here by reason of the existence of a rather unusual fact pattern in this action to set aside an alleged fraudulent conveyance from a non-participating third party to the wife of the debtor with the grantee wife assuming an existing mortgage on the property in question as a recited part of the consideration for the conveyance, this federal court must explore even further through the maze of somewhat confusing opinions by the Supreme Court of Alabama dealing with the law of fraudulent conveyances in Alabama,[12] some of ancient vintage, before the correct result emerges, at least to the point of reasonable legal certainty.

6. The leading decisions which articulate the principles governing fraudulent Alabama conveyances are *Smith v. Wilder*, 270 Ala. 637, 120 So.2d 871 (1960), and its progeny, *J.C. Jacobs Banking Co. v. Campbell*, 406 So.2d 834 (Ala.1981).[13] In *Wilder* the Supreme Court of Alabama analyzed the conflicting case law and enunciated the principles which it deemed correct pertaining to a case of an existing creditor seeking to set aside, as fraudulent, a conveyance by his debtor:

> An existing creditor seeking to set aside a conveyance may do so either because of actual fraud or on account of what is termed constructive fraud.
>
> Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor.
>
> Constructive fraud, on the other hand, is based on facts and circumstances which the courts have said constitute legal fraud irrespective of actual intent.

The term "constructive fraud" is generally used in referring to those instances where a grantor, indebted at the time, conveys property on a good as distinguished from a valuable consideration. Such conveyances are frequently referred to simply as voluntary conveyances.

270 Ala. at 649, 120 So. 871.

With respect to the burden of proof, the *Wilder* court made the following declarations:

> The burden is upon an existing creditor alleging actual fraud to prove it. *Birmingham Trust & Savings Co. v. Shelton*, 231 Ala. 62, 163 So. 593 [1935].
>
> Where a conveyance is sought to be vacated on the ground that it was voluntary, the burden is upon the complainant to show that his debt antedated the conveyance attacked.
>
> When such proof is made the burden shifts to the grantee to go forward with the evidence.
>
> . . . .
>
> If the evidence shows that the alleged fraudulent grantor was insolvent, failing or financially embarrassed when he made the conveyance, even though the consideration paid by the grantee was a new one, the burden is upon the grantee of showing a consideration both valuable and adequate.
>
> However, if it does not appear that the grantor was insolvent, failing or financially embarrassed when he made the conveyance and the evidence shows that the consideration paid by the grantee was a new one, not resting on prior indebtedness, the only burden upon the grantee is to show that he paid a valuable consideration—substantial and not merely nominal.
>
> . . . .

---

**12.** The Alabama Supreme Court in *Smith v. Wilder*, 270 Ala. 637, 120 So.2d 871 (1960), discussed hereafter, acknowledges that historically the law of fraudulent conveyances in Alabama laws has been marked by confusion and uncertainty.

**13.** The *Campbell* court overruled *Smith v. Wilder* to the limited extent that *Wilder* requires actual proof of the grantor's fraudulent intent before a conveyance may be partially set aside because made for substantially inadequate consideration.

But proof of payment of a present substantial valuable consideration did not in and of itself determine the rights of the parties.

Even though a consideration for the deed was a present valuable consideration, the complainants could have the deed vacated in its entirety by showing the grantor's intent to defraud and a participation therein by the purchaser ... with knowledge of such intent or with notice of some fact calculated to put him on inquiry which, if followed up, would have lead [sic] to a discovery of the grantor's fraudulent intent. The burden of making such a showing was on the complainants. *McClintock v. McEachin,* 249 Ala. 591, 32 So.2d 305 [1947], and cases cited.

*Smith v. Wilder,* 270 Ala. at 650, 120 So.2d 871.

The facts of *Smith v. Wilder* involved, *inter alia,* a conveyance from father to son, which plaintiff alleged to be both actually and constructively fraudulent. The trial court found the son gave valuable and adequate consideration and was not a participating grantee, having no knowledge, either actual or implied, of any fraudulent intent on the part of the grantor, his father. The Alabama Supreme Court affirmed the finding of the trial court that the son had no knowledge of any fraudulent intent on the part of his father, the grantor, or notice of any fact which, if pursued, would have led to discovery of such intent, if any, and the trial court's consonant conclusion that the conveyance should not be set aside in its entirety. Nevertheless, the Supreme Court of Alabama remanded the case for a determination of whether the grantor in fact exercised a fraudulent intent, an issue about which the lower court had made no finding. In so doing, the Court stated:

The consideration paid by [the son] for the lands covered by the deed in question, although valuable, was in our opinion substantially inadequate. Therefore, we think the trial court should have considered the question as to whether the deed was fraudulently made by the grantor. This because of the equitable doctrine that, when a conveyance is fraudulently made upon a consideration which is valuable, but substantially inadequate, and the grantee is without notice of the grantor's intent and himself intends no fraud, the conveyance will be allowed to stand only as security for the value actually paid. *London v. G.L. Anderson Brass Works,* 197 Ala. 16, 72 So. 359, and cases cited; *Rogers v. Conaway,* 226 Ala. 334, 147 So. 152 [1933]; *Morrison v. Federal Land Bank of New Orleans,* 232 Ala. 138, 167 So. 288 [1936].

270 Ala. at 651, 120 So.2d 871.

Returning now to *J.C. Jacobs Banking Co. v. Campbell, supra,* 406 So.2d commencing at 841, for the purpose of reviewing the *Campbell* court's critique and subsequent modification of *Wilder:*

### The Nonjury Trial

An initial examination of the cross-appeals of Campbell from judgments favorable to defendants Brooks Derrick, Izzy Derrick, Payne, Self, and the Words will prove helpful to an understanding of the issues raised in the other appeals. Judgment was rendered in favor of these defendants, each of whom was found by the trial court to have been a bona fide purchaser from Bynum, having paid an adequate consideration while not participating actively or constructively in his fraud.

Campbell contends the trial court misinterpreted applicable law in looking to questions of the adequacy of the consideration paid by appellants, and of their participation *vel non* in Bynum's fraudulent intent, as determinative of whether the conveyances to them should be set aside.

Code 1975, § 8–9–6, the basis for plaintiff's claim for relief, provides:

§ 8–9–6. Conveyances or assignments of property, etc., to hinder creditors, etc., void.

[Language of statute omitted].

This statute is declaratory of common law and of generally recognized equitable principles. *Fleming v. Kirkland,* 226 Ala. 222, 146 So. 384 (1933).

It is Campbell's position that a conveyance is void and due to be set aside as fraudulent, without regard to adequacy of consideration or grantee participation, upon proof of the three elements enumerated in *Roddam v. Martin,* 285 Ala. 619, 235 So.2d 654 (1970):

[Quote from *Roddam* re three elements omitted.]

Plaintiff contends the language of Code 1976, § 8–9–6, consistently with *Roddam,* speaks only to the grantor's fraudulent intent, noting that no mention is made of consideration or grantee participation in fraud. As the first and third elements of *Roddam* were not controverted at trial, Campbell claims the conveyances to cross-appellees were due to be set aside once Bynum's fraudulent intent in making them was proved.

[Discussion re *Wilder* and quotes from *Wilder* omitted.]

. . . .

Campbell does not contend Bynum was insolvent, failing, or financially embarrassed at the time the conveyances in question were made, or that any of them were made for less than a valuable consideration, substantial and not merely nominal. Thus, cross-appellees assert, under *Smith v. Wilder,* the issue to be resolved is whether Bynum transferred his property with a fraudulent intent, in which his grantees participated with either actual or constructive knowledge.

Campbell argues, however, that this interpretation of *Smith v. Wilder* cannot result in harmony between the facts of that case and the result reached by this court in it . . .

[Recitation of facts of *Wilder* omitted.]

Campbell contends that this court, by remanding for a finding regarding the father's intent, confirmed that it is the fraudulent intent *vel non* of the grantor which determines whether a conveyance should be set aside and, if it is due to be set aside, the court will then decide whether the grantee should receive the benefit of equitable principles. Thus, according to Campbell, the entire analysis regarding consideration and grantee participation in *Wilder* is simply an equitable inquiry. The inquiry is whether a conveyance due to be set aside because of the grantor's fraudulent intent, is to be set aside *in toto* when the grantee is found to be a participant in the fraud, or is to be set aside only partially, with the grantee protected to the extent of consideration paid, when found to be an innocent purchaser. In support of this proposition, Campbell points to this court's phraseology that upon a showing of grantee participation the deed could be vacated "in its entirety"; language, he says, that is meaningless unless used for the purpose of making this distinction.

*The reasoning employed by Campbell is logically unacceptable. Indeed, the three elements set out in Roddam must be found in order that a conveyance be declared fraudulent under the statutory proceeding whether the plaintiff is proceeding under a theory of actual or constructive fraud. Further proof, however, is required before a conveyance found to be fraudulent is due to be set aside.* [Emphasis added.]

Where it appears the transfer in question was made for a valuable consideration, a plaintiff seeking to invoke the protection of Code 1975, § 8–9–6, must show the mutual fraudulent intent of the parties to the transaction. Proof of the grantor's intent alone is insufficient to cause the conveyance to be set aside. See 37 Am.Jur.2d *Fraudulent Conveyances* § 6 (1954).

The reason for this requirement is that, failing such proof, the grantee is a bona fide purchaser for value who is entitled to keep the fruits of his bargain. See Harris, "Some Aspects of Fraudulent

401

Conveyances in Alabama," 6 Ala.Law. 170 (1945). The cases are replete with holdings that where the grantor is not insolvent, failing, or financially embarrassed, a plaintiff creditor must prove participation by the grantee in the form of knowledge of the grantor's fraudulent intent, or notice of facts putting him on inquiry, which, if followed up, would lead to discovery of the grantor's intent; this would be required in order to set aside a fraudulent conveyance made for present valuable consideration. *McClintock v. McEachin, supra; Van Antwerp v. Van Antwerp,* 242 Ala. 92, 5 So.2d 73 (1941); *London v. G.L. Anderson Brass Works, supra; Ledbetter v. Davenport Bros.,* 154 Ala. 336, 45 So. 467 (1908); *Pippin v. Tapia,* 148 Ala. 353, 42 So. 545 (1906); *Smith v. Heineman,* 118 Ala. 195, 24 So. 364 (1897); *Florence Sewing Machine Co. v. Zeigler,* 58 Ala. 221 (1877); *Crawford v. Kirksey,* 55 Ala. 282 (1876).

As previously indicated, and stated somewhat differently, the only recognized exception to this rule is the equitable principle applied when the consideration paid is found to be substantially inadequate.

Generally, inadequacy of consideration is only a "badge" or indicium of fraud. Where, however, the consideration is substantially or grossly inadequate, fraud may be inferred as a matter of law from inadequacy alone. Therefore, when the consideration, though valuable, is found to be substantially inadequate, and the grantee is without knowledge of the grantor's intent or of facts putting him on inquiry as to that intent, the conveyance will be allowed to stand only as security for the value actually paid. *London v. G.L. Anderson Brass Works, supra,* and cases cited therein; *Morrison v. Federal Land Bank of New Orleans, supra.*

This equitable principle was correctly determined to be controlling in *Wilder,* once it was found that the consideration given by the son was substantially inadequate. In applying the principle, however, this court inadvertently failed to recognize the very distinction it had drawn between actual and constructive fraud. Constructive fraud was equated only with voluntary consideration. A valuable but substantially inadequate consideration, however, is also a part of constructive fraud; the mutual fraudulent intent of the parties is inferred by law from the great disparity between the real value and the consideration given. *London v. G.L. Anderson Brass Works, supra; Little v. Sterne,* 125 Ala. 609, 27 So. 972 (1899); *Gordon v. Tweedy,* 71 Ala. 202 (1881).

Because fraudulent intent in *Wilder* was established as a matter of law by the son's payment of substantially inadequate consideration, it was not necessary for this court to remand for a finding concerning the grantor father's intent. This not too apparent, and understandable, flaw in the opinion was astutely seized upon by Campbell. It is what lends credence, however specious, to his arguments regarding proper interpretation of *Wilder.*

We, therefore, overrule *Smith v. Wilder* to the limited extent that it requires actual proof of the grantor's fraudulent intent before a conveyance may be partially set aside because made for substantially inadequate consideration.

406 So.2d at 841–844. While the above quotes from *J.C. Jacobs Banking Co. v. Campbell* have been far too lengthy, this Supreme Court of Alabama decision has now supplanted *Wilder* as the seminal case on the law of fraudulent Alabama conveyances and many of the principles there enunciated or quoted from prior authoritative reported cases and there reaffirmed are instructive in connection with the quest of this Court for a correct reasoned result in the above entitled civil action. For this reason the Court has the temerity to additionally include in the within memorandum of decision the Campbell court's reaffirmation of three long settled principles of Alabama fraudulent conveyance law, 406 So.2d at 847:

The Gladishes also raise as an issue the adequacy of consideration paid by them. Because we affirm and approve the findings that the Gladishes were fraudulent participants we see no need to address this issue. *Where a conveyance is made upon a present consideration, there being an intent on the part of the grantor and the grantee to defraud the grantor's creditors, the conveyance is void as to existing creditors, however valuable and adequate the consideration. Smith v. Heineman,* supra [118 Ala. 195, 24 So. 364 (1897)] *If the grantee has notice of facts putting him on inquiry as to the grantor's fraudulent intent, it is the same as if he too has the intent* [Emphasis added]. *Crawford v. Kirksey,* supra [55 Ala. 282 (1876)]; *Waddle v. Great Southern Phos. Co.,* 184 Ala. 346, 63 So. 462 (1913); *Smith v. Collins & Griffith,* 94 Ala. 394, 10 So. 334 (1891).

. . . .

It is well settled that conveyances or transfers made to hinder, delay, or defraud creditors are valid and operative between the parties when fully consummated. Neither party can rescind or defeat them. *Continental Ins. Co. v. Dotson,* 260 Ala. 499, 70 So.2d 796 (1954). A fraudulent conveyance is valid as to all the world except creditors of the grantor, notwithstanding the statute declaring that such conveyances are void. *Brown v. Andrews,* 288 Ala. 111, 257 So.2d 356 (1972); *First National Bank v. Love,* 232 Ala. 327, 167 So. 703 (1936).

\*   \*   \*   \*   \*   \*

Where parties enter into an arrangement pursuant to a fraudulent conveyance, a court will not interfere between them, but will leave them where they have placed themselves. This stems from the maxim "in pari delicto melior est conditio possidentis": in the case of equal or mutual fault the condition of the party in possession is the better one. *Glover v. Walker,* 107 Ala. 540, 18 So. 251 (1894); *King v. King,* 61 Ala. 479 (1878).

7. An impressive array of ancient but authoritative Alabama case law has firmly established the fraudulent conveyance principle that a conveyance made from a third party to a wife, at the instance of her husband, who paid the consideration therefor, is void as against the latter's existing creditors. Such conveyances are in equity regarded in the same light as if they had been made directly from the husband as grantor to the wife. *Smith's Executor v. Cockrell,* 66 Ala. 64 (1880); *Peevey v. Cabiness,* 70 Ala. 253 (1881); *Stoutz v. Huger,* 107 Ala. 248, 18 So. 126 (1895); *Kelley v. Connell,* 110 Ala. 543, 18 So. 9 (1895); *Southern Home Building & Loan Ass'n v. Riddle,* 129 Ala. 562, 29 So. 667 (1901); *Wimberly v. Montgomery Fertilizer Co.,* 132 Ala. 107, 31 So. 524 (1901); *John Silvey & Co. v. Vernon,* 153 Ala. 570, 45 So. 68 (1907); *Elam v. A.P. Brewer Lumber Co.,* 176 Ala. 48, 57 So. 483 (1912); and *Veal v. Whittemore,* 176 Ala. 490, 58 So. 919 (1912).

8. While Martha A. Boogaerts' assumption and agreement to pay (in her former name of Martha A. Roberts which was not then her true name) the $25,556.76 unpaid balance of the First Federal first mortgage indebtedness on the South Sequoia Boulevard property as a part of the consideration moving Hensley Construction Co., Inc. to execute and deliver to her in the name of Martha A. Roberts the February 16, 1976 deed of conveyance to the residential real estate in question would normally constitute a valid and valuable consideration under the laws of the State of Alabama for such conveyance, *National Bank of Republic v. Dickinson,* 107 Ala. 265, 18 So. 144 (1895), the complete failure of defendant Boogaerts to prove that she was then or subsequently personally able (until the property was rented by her upon the Glascocks' move to Louisiana in September 1976) to pay such indebtedness negates what would otherwise be considered and treated in the eyes of the law as valuable and substantially adequate consideration for the conveyance. Where a fraudulent conveyance is charged, the burden of proof that there was a valuable and adequate consideration for the transfer rests

upon the grantee. *Murphy v. Pipkin*, 191 Ala. 111, 67 So. 675 (1914); *Alabama Credit Corporation v. Deas*, 417 F.2d 135, 140 (5th Cir.1969); *Gordon v. Gorman*, 436 So.2d 851, 854–855 (Ala.1983). As a matter of fact, the Court has found as a fact from the evidentiary record herein [Finding of Fact No. 16] this defendant's personal financial inability to comply with the financial obligations incurred by her on paper under the June 22, 1972 Real Estate Contract (Government Exhibit No. 1), under the August 7, 1972 Lease-Sale Contract (Government Exhibit No. 2) and under the February 17, 1976 deed of conveyance (Government Exhibit No. 3). The record is replete with unassailable proof of Martha Boogaerts' complete and total reliance upon Glascock during this period for even her basic necessities of life. For the lack of a better word, the Court will label this incurrence and assumption of indebtedness as "paper consideration," here holds that this evidentiary record shows that it was not worth the paper on which it was written, and further holds that such mortgage assumption under the facts here presented was not only not valuable but was in fact and law substantially inadequate as against a creditor. See 6 A.L.R.2d 270: Annotation: "Assumption of mortgage as consideration for conveyance attacked as in fraud of creditors." See generally, *Roddam v. Martin*, 285 Ala. 619, 623, 235 So.2d 654.

■ This evidentiary record presents a conveyance of real property from a third party to the wife but at the specific instance and direction of the husband who furnished the entire consideration, although insolvent.[14] Under this state of facts, the Court concludes that the conveyance should be scrutinized by the Court as one between husband and wife in accordance with the teachings of the Supreme Court of Alabama. In *Gurley v. Blue Rents, Inc.*, 383 So.2d 531, 535 (Ala.1980), a case in which a creditor brought suit to set aside an alleged fraudulent conveyance

wherein husband debtor conveyed to wife his respective share in property held by them as joint tenants with right of survivorship, the Alabama Supreme Court gave clear directives for trial courts to follow in considering a conveyance of the type now before the Court:

Having determined that the action was we find properly maintained, we now turn our attention to the question of whether the trial court was correct in finding that the present conveyance defrauded the appellee. In resolving this issue, it highly significant that we are dealing with a conveyance of real property between husband and wife, one of whom was in financial difficulty. Any time an alleged fraudulent conveyance involves a husband and wife, the approach which must be taken by the court is affected. Exactly how it is affected varies from state to state [In this regard see Annot. 35 A.L.R.2d 8 and 37 Am. Jur.2d *Fraudulent Conveyances* § 25 (1976)]. In Alabama, the fact that a conveyance took place between a husband and wife does not raise any presumption of fraud, nor does it represent a badge of fraud. Instead, it alters the scrutiny with which the court must consider the conveyance. In *Umphrey v. Barfield*, 238 Ala. 11, 13, 189 So. 64, 65 (1939), this Court reasoned that "... while this relationship [the husband-wife relationship] is not within itself a badge of fraud, 'yet under all the authorities, supported by reason and common sense,' transactions between persons occupying such relationship are to be jealously watched and must be subjected to closer scrutiny than would be required of a stranger." Thus, the very fact that Mr. and Mrs. Gurley were the sole parties to the conveyance should have completely changed the way in which the trial court viewed the conveyance. It was essential

---

**14.** Under normal circumstances the wife-grantee's assumption and agreement to pay an existing mortgage on the real property which was the subject of the alleged fraudulent conveyance would constitute a valuable consideration under Alabama law. However, the Court has ruled otherwise here for the reasons hereinabove stated.

that the conveyance be more closely scrutinized.

In addition, the relationship of the parties necessitated a shift in the burden of proof. This Court has held on numerous occasions that when a husband conveys certain property to his wife and that conveyance is attacked as a fraud on the husband's existing creditors, the wife bears the burden of proving that the conveyance was based upon a valuable consideration, substantial and not merely nominal. *Smith v. Wilder*, 270 Ala. 637, 120 So.2d 871 (1960); *Dutton v. Lindler*, 238 Ala. 363, 191 So. 210 (1939). The wife is thus laden with the initial responsibility of proving the bona fide character of the underlying transaction.

After reviewing the record and transcript of the trial, it is clear that the trial court, hearing evidence ore tenus, did not approach the case in the manner outlined above, but we find no error here. The trial court required the appellee to carry the burden of proof in establishing fraud in accordance with the requirements espoused by this Court in *Roddam v. Martin*. 285 Ala. 619, 235 So.2d 654 (1970). In doing so it determined that the appellee had met its burden and further concluded that the appellants failed to show the presence of any adequate consideration. Although the approach thus taken by the trial court on who had the burden of proof was incorrect because it placed an improper burden upon the appellee, we hold that the appellants were not prejudiced thereby. After reviewing the record, we find no clear or palpable error in the trial court's determinations. We, therefore, affirm the trial court's finding that the present conveyance perpetrated a fraud upon the appellee.

In conformity with the mandate of *Gurley v. Blue Rents, Inc.*, the Court has closely scrutinized the conveyance here asserted by the United States to be fraudulent in hinderance of its lawful claims and demands against William D. Glascock, has in its deliberations shifted to the wife (now known as Martha A. Boogaerts) the initial responsibility of proving the bona fide char-

acter of the real estate transaction in question, and has reached the finding and conclusion that defendant Boogaerts abjectly failed to bear her burden of proving that the February 17, 1976 conveyance was based upon a valuable consideration supplied by her in her capacity as the then wife of defendant Glascock, substantial and not merely nominal.

9. Applying the settled legal principles of Alabama fraudulent conveyance law hereinabove set out to the facts of this case heretofore found specially by the Court, the Court concludes and holds that the overwhelming evidence in this case proves the existence, presence and concurrence of the three elements which *Roddam v. Martin, supra*, states to be essential before a conveyance can be declared fraudulent under § 8–9–6 (Code 1975). Without question the United States at all times here pertinent was a creditor [of Glascock] to be defrauded. Without peradventure William D. Glascock, even by his own admittance, intended to defraud the United States and his other creditors from their lawful claims and demands against him and his property by causing at his instance and direction the Real Estate Contract of June 22, 1972 (Government Exhibit 1), the Lease-Sale Contract of August 7, 1972 (Government Exhibit No. 2) and finally the Deed of Conveyance of February 17, 1976 (Government Exhibit No. 3) to each contain the name of Martha A. Roberts, first as his illicit lover-purchaser, secondly as his paramour-lessee, and thirdly as his wife-grantee. Finally, without dispute there was a conveyance of property out of which the United States, as creditor, could have realized its claims against Glascock, or some portion thereof. It is indeed a happenstance that the equity value of the South Sequoia Boulevard property is today worth far more than Glascock's equity value therein as of the date of the execution and delivery of the February 17, 1976 fraudulent conveyance. Having found the three elements enumerated in *Roddam v. Martin* to be here present and proved, the Court holds and declares the February 17, 1976 deed of conveyance, the

June 22, 1972 Real Estate Contract of Sale and purchase and the August 7, 1972 Lease-Sale Contract from Hensley Construction Co., Inc. to Martha A. Roberts to be fraudulent under § 8–9–6 (Ala. Code 1975) and now further expressly finds and holds, pursuant to the requirements of *J.C. Jacobs Banking Co., Inc. v. Campbell, supra*, that this record abundantly shows that defendant Boogaerts knowingly and wilfully, with full knowledge of Glascock's then extreme financial distress and his intent to defraud the United States and his other creditors by causing the South Sequoia Boulevard residential property to be purchased by him but placed in her name for the purpose of hindering and defrauding his creditors, including the United States, and of preventing such creditors from being able to realize their claims from the equity in the property, participated in such fraudulent scheme with Glascock from June 22, 1972 to and including at least the date on which Glascock and his wife moved to the State of Louisiana September 1976, specifically including the date of February 17, 1976 on which the fraudulent conveyance was executed and delivered to defendant Boogaerts (then Martha A. Glascock but using her former name of Martha A. Roberts in business transactions). In other words, there is in this evidentiary record powerful proof of the mutual fraudulent intent of these defendants and their actual fraud respecting the real es transaction which this action attacks as fraudulent. And now reiterating, the Court finds and holds that defendant Boogaerts furnished only nominal consideration in this questioned transaction, only her name … but not her true name. The February 17, 1976 deed of conveyance here found to be fraudulent and to have been executed, delivered in violation of § 8–9–6 (Code Ala. 1975) is void as to William D. Glascock's creditor, United States of America, and is due to be appropriately set aside in such fashion that the title thereto will not revert to grantor Hensley Construction Co., Inc. and that its public sale by the United States Marshal for the Northern District of Alabama can be effected with due dispatch

after public notice as provided by law. The first mortgage indebtedness of First Federal Savings and Loan Association of Florence (including accrued interest) against such real property will be paid from the first proceeds of such sale. Since the property is now occupied by tenants under rental agreement with defendant Boogaerts all rentals hereafter due from such tenants shall continue to be paid to Nadine Darby, the real estate agent, who shall continue to make the First Federal monthly mortgage payments from the rental fund until otherwise directed by the Court and shall hold the balance of such funds in escrow until further order of the Court. The occupancy rental rights of such tenants shall be later terminated by order of the Court. The insurer of such property shall be forthwith notified of the within memorandum of decision and accompanying order.

An appropriate Order will be entered in conformity herewith.

## ORDER

In conformity with Memorandum of Decision entered contemporaneously in the above entitled civil action, it is

ORDERED, ADJUDGED and DECREED:

1. that the June 22, 1972 Real Estate Contract of Sale and Purchase by and between Hensley Contracting Co., Inc., as Seller, and Martha A. Roberts, as Purchaser, wherein Seller agreed to sell and Purchaser agreed to purchase for a consideration and on terms and conditions therein recited Lot 151 in The Cedars, a subdivision in the City of Florence, Lauderdale County, Alabama, according to plat thereof recorded in Plat Book 4 at pages 50–51 in the Office of the Judge of Probate of Lauderdale County, Alabama, commonly known as 119 South Sequoia Boulevard in the City of Florence, Alabama [hereinafter referred to as "Lot 151 in The Cedars"]; (2) the August 7, 1972 Lease-Sale Contract by and between Hensley Construction Co., Inc., as Lessor, and Martha A. Roberts, as Lessee, under the terms of

which Lessor leased to Lessee and Lessee hired and rented from Lessor that certain improved residential property situated in the City of Florence, Lauderdale County, Alabama known as Lot 151 in The Cedars for a term certain at stated rental and on recited conditions, with option granted Lessee to purchase such real estate upon her fulfillment of the terms and provisions of such lease-sale agreement; and (3) the Deed of Conveyance dated February 17, 1976 by and from Hensley Construction Co., Inc., as Grantor, to and with Martha A. Roberts, as Grantee, conveying to such named Grantee that certain improved residential real estate situated in the City of Florence, Lauderdale County, Alabama known as Lot 151 in The Cedars for a consideration therein recited, including Grantee's record assumption and agreement to pay the then unpaid balance of the first mortgage indebtedness on the property therein described to First Federal Savings & Loan Association of Florence (hereinafter referred to as the "February 17, 1976 deed of conveyance"), such February 17, 1976 deed of conveyance being recorded in Deed Book 1095 at pages 1152 and such First Federal mortgage being recorded in Mortgage Book 1043 at pages 57–59 both in the Office of the Judge of Probate of Lauderdale County, Alabama,

are each hereby ADJUDGED and DECLARED to be fraudulent transactions and conveyances made at the instance and direction of defendant William D. Glascock with the knowledge and connivance of defendant Martha A. Boogaerts then using the name of Martha A. Roberts for the purpose of hindering, delaying or defrauding the plaintiff United States of America in its then capacity as a substantial creditor of defendant Glascock, all in violation of § 8-9-6 (Ala. Code 1975, predecessor statute Title 20 § 7 (Code Ala.1940)), that each such transaction and conveyance hereinabove described is further hereby ADJUDGED and DECLARED to be VOID as to plaintiff creditor United States of America, and that the record fee simple title to

and the legal and equitable ownership of the described real estate which is the subject of such February 17, 1976 deed of conveyance, together with the appurtenances thereunto appertaining, is hereby DIVESTED of record by decree of the Court under its inherent powers first from and out of defendant Martha A. Boogaerts (but in the name of Martha A. Roberts) and then from Hensley Construction Co., Inc., a corporation, the respective designated grantee and grantor in such void February 17, 1976 deed of conveyance and is hereby simultaneously INVESTED in and to THOMAS C. GREENE, as United States Marshal in and for the Northern District of the State of Alabama who is herewith expressly AUTHORIZED, EMPOWERED and DIRECTED, in addition to all powers conferred upon such United States Marshal by law, to proceed with all due dispatch to sell subject real property, together with all appurtenances thereunto appertaining, at public sale, free and clear of all liens and encumbrances, including any and all federal tax liens but excepting lien for current ad valorem taxes, to the highest and best bidder for cash after first giving public notice of such sale as provided by law and to thereafter execute and deliver to the purchaser or purchasers thereof a good and merchantable title thereto by proper deed of conveyance (subject only to lien for current ad valorem taxes which shall be prorated as of date of closing), together with quiet and peaceable possession to such property; provided, however, from the proceeds of such sale the first mortgage indebtedness of First Federal Savings & Loan Association of Florence hereinabove referred to shall first be paid in full and next in succeeding order: (1) the proper proration of ad valorem taxes; (2) cost of publication, cost of insuring the improvements on such real estate against the hazard of loss by fire and other customary hazards from the date hereof to the date of conveyance to purchaser or purchasers, and other reasonable expenses of sale; (3) court costs herein; and (4) the remaining balance of such sales proceeds to be paid

over to the plaintiff United States of America for credit on the federal tax indebtedness owed the United States of America by defendant Glascock (with application to first payment of such tax penalties, interest and other items as duly prescribed by law).

A Supplemental Order will be hereafter rendered and entered in the above entitled civil action respecting: (1) notification of the entry of the within Order and accompanying Memorandum of Decision to (i) First Federal Savings & Loan Association of Florence; (ii) the present tenants of such property; (iii) the present insurer of such property; (iv) Nadine Darby, real estate rental agent; and (v) the Tax Assessor and Tax Collector of Lauderdale County, Alabama; (3) the right of Nadine Darby, real estate rental agent, to continue handling the rental of such property on a short term basis for and on behalf of the United States Marshal on and subject to the present rental terms and conditions, including monthly rental, rental commission and the payment by such real estate rental agent of the monthly mortgage payment to First Federal Savings & Loan Association of Florence from the month to month rental funds received by her from the tenants of such property; (4) the interception by this Court as of the date hereof of any rental funds from the rental of such property by defendant Martha A. Boogaerts through her Florence, Alabama real estate rental agent now in the possession and control of such real estate rental agent, for the use and benefit of plaintiff United States of America in its capacity as a creditor of defendant William D. Glascock; (5) the continuation of the present fire insurance (plus other hazards) policy covering the improvements on such property in the name of the United States Marshal, with First Federal Savings & Loan Association of Florence named therein as first mortgagee, as its interest may appear, and the authorized payment by the United States Marshal of the premium therefor; (6) the right of the plaintiff United States of America in its capacity as a creditor of defendant William D. Glascock to have and receive any and all *net* rentals from authorized rent interception and from the authorized rental of such property from the date hereof to the date of the authorized conveyance of such property by the United States Marshal to the purchaser or purchasers of such property at the authorized public sale; and (7) any other lawful matters.

## SUPPLEMENTAL ORDER

The within Order of the Court entered in the above entitled civil action is supplemental in nature to the Order of the Court entered herein on March 26, 1986 which accompanied the Memorandum of Decision in this cause dated March 26, 1986.

It is ORDERED, ADJUDGED and DECREED as follows:

1. Any and all rental funds [from the rental of the Florence, Alabama residential real estate hereinafter described] presently in the possession and control of Ms. Nadine Darby, 100 Darby Avenue, Florence, Alabama 35630, in her capacity as real estate rental agent for defendant Martha A. Boogaerts regarding the rental of the improved residential real estate legally known as LOT 151 in The Cedars, a subdivision in the City of Florence, Lauderdale County, Alabama, commonly known as 119 South Sequoia Boulevard, Florence, Alabama, are hereby INTERCEPTED by the Court for the ultimate use and benefit of the plaintiff United States of America in its capacity as a creditor of defendant William D. Glascock and Ms. Nadine Darby is hereby DIRECTED and REQUIRED to forthwith pay over and transfer such funds to Thomas C. Greene, United States Marshal, Northern District of Alabama, Room 128, Federal Courthouse, Birmingham, Alabama 35203.

2. Ms. Nadine Darby is hereby AUTHORIZED and EMPOWERED to continue handling the rental of the real estate hereinabove particularly described on a short term basis [no more than month-to-month] for and on behalf of the United States Marshal of the Northern District of Alabama on and subject to the present rental

terms and conditions, including present monthly rental, 10% rental commission, and the payment by her, as real estate rental agent, of the monthly mortgage payment [including pro rata taxes and insurance] to First Federal Savings & Loan Association of Florence from the month to month rental funds received by her from the tenants of such property, with all remaining net rentals to be forthwith forwarded by her each month to the United States Marshal who shall hold the same for the ultimate use and benefit of plaintiff United States of America in its capacity as creditor of defendant William D. Glascock. Such real estate rental agent is specifically authorized to continue renting such property to the present tenants on and subject to the present rental terms and provisions, including present monthly rental, but only on a month to month basis, if they so desire.

3. The present fire insurance policy [and insurance against other hazards] covering the improvements on the above described real estate issued by Allstate Insurance Company to defendant Martha A. Boogaerts with First Federal Savings & Loan Association of Florence named therein as first mortgagee as its interest may appear may be continued in force and effect in the name of the new owner and insured, Thomas C. Greene, United States Marshal, Northern District of Alabama, Room 128, Federal Courthouse, Birmingham, Alabama 35203, with same mortgagee clause, by the authorization of the Court here given until such property is sold at public sale and thereafter conveyed to the purchaser or purchasers and the premiums therefor may continue to be paid from escrow funds held by First Federal Savings & Loan Association of Florence, as mortgagee. Any refund due the insured by the insurer upon the cancellation of such policy [which shall be effected simultaneously with the conveyance of such property to the purchaser or purchasers thereof at public sale] of any unearned premiums shall be refunded by the insurer to the United States Marshal for the use and benefit of plaintiff United States of America in its capacity as creditor of defendant William D. Glascock.

4. Upon the public sale of such property by the United States Marshal and its conveyance to the purchaser or purchasers the first mortgage indebtedness of First Federal Savings & Loan Association of Florence [including accrued interest to date of payoff] shall forthwith be paid by the United States Marshal in full from the first proceeds of such sale. Any and all unused escrow funds then held by First Federal Savings & Loan Association of Florence shall be paid over by such Association to the United States Marshal for the use and benefit of plaintiff United States of America in its capacity as creditor of defendant William D. Glascock.

5. The United States Marshal is expressly authorized and empowered to permit the continued rental of such property by Nadine Darby, as real estate rental agent, as hereinabove provided, and to authorize and pay for from rental funds any necessary repair and maintenance to such property which is the obligation of the owner under the rental agreement. Such United States Marshal is further expressly authorized and empowered by the Court to insure such property against fire loss and other standard hazards in at least the amount presently insured and to cause or permit the premiums therefor to be paid from the escrow funds of First Federal Savings & Loan Association of Florence. Preference shall be given to Allstate Insurance Company as the insurer of such property if such insurer is agreeable to continuing the present policy at the present rate in the name of the new owner, the United States Marshal.

It is further ORDERED that a certified copy of the Order of the Court entered in the above entitled civil action and accompanying the Court's Memorandum of Decision herein dated March 26, 1986 (hereinafter referred to as "the March 26, 1986 Order") be forthwith filed by the Clerk of this Court in the Office of the Judge of Probate of Lauderdale County, Alabama for recording in the land records of such county, the

costs thereof to be paid by the Clerk and taxed as a part of the costs of this cause. And it is further

ORDERED that a certified copy of such March 26, 1986 Order be forthwith mailed by the Clerk of this Court by United States Mail properly addressed and postage prepaid to: (1) Mr. Grady Ward, President, First Federal Savings & Loan Association, 102 S. Court Street, Florence, Alabama 35630; (2) Tax Assessor, Lauderdale County, Courthouse, Florence, Alabama 35630; (3) Tax Collector, Lauderdale County, Courthouse, Florence, Alabama 35630; (4) Ms. Nadine Darby, 100 Darby Avenue, Florence, Alabama 35630; (5) Thomas C. Greene, United States Marshal, Northern District of Alabama, Room 128, Federal Courthouse, Birmingham, Alabama 35203; (6) Norman and Carol Jacobs, tenants, 119 South Sequoia Boulevard, Florence, Alabama 35630; and (7) Mr. Robert G. Maxwell, Allstate Insurance Company, 1206 Helton Drive, Florence, Alabama 35630. And it is further

ORDERED that a copy of the March 26, 1986 Order of the Court herein, a copy of the March 26, 1986 Memorandum of Decision herein and a copy of the within Order be forthwith mailed by the Clerk to all counsel of record and to defendant William D. Glascock, #00962017, Federal Prison Camp, Maxwell Air Force Base, Alabama 36112. And it is further

ORDERED that a copy of the within Order be forthwith mailed by the Clerk to: (1) Nadine Darby, 100 Darby Avenue, Florence, Alabama 35630; (2) tenants Norman and Carol Jacobs, 119 South Sequoia Boulevard, Florence, Alabama 35630; (3) Mr. Robert G. Maxwell, Allstate Insurance Company, 1206 Helton Drive, Florence, Alabama 35630; (4) Mr. Grady Ward, President, First Federal Savings & Loan Association of Florence, 102 South Court Street, Florence, Alabama 35630; and (5) Thomas C. Greene, United States Marshal, Northern District of Alabama, Room 128, Federal Courthouse, Birmingham, Alabama 35203; and (6) all counsel of record in the above entitled civil action.